331 P.2d 1092

STATE of Arizona, Appellee,

v.

Lewis H. HUDSON, Appellant.

No. 1120.

Supreme Court of Arizona.

Nov. 26, 1958.

Robert Morrison, Atty. Gen., L. Alton Riggs, Special Asst. Atty. Gen., and Bill Helm, Yuma, for appellee.

Melvin J. Owens, Phoenix, for appellant.

JOHNSON, Justice.

The defendant, Lewis Henry Hudson, was informed against and tried for the unlawful killing, on or about August 29, 1957, of one James McFadden. He was convicted of second degree murder and sentenced to serve from fifteen to twenty-five years in the state prison, his motion for new trial was denied, and this appeal follows.

It appears from the evidence that the defendant left Los Angeles by freight train on August 27, 1957; and the following day, in the train yard at Colton, California, he met James McFadden, hereinafter referred to as the deceased. Thereafter, Chester Brooks and his father, William Brooks, joined the group, and after much drinking as hereinafter related, the group boarded a freight train and arrived in Yuma, Arizona, on the morning of August 29th. That night the group boarded another freight train headed east and the group was apparently congenial until the freight train was ten or fifteen miles out of Yuma. At this point the stories differ. William and Chester Brooks testified that the defendant jumped deceased with no provocation; that he used a knife on deceased; that he struck him with a bottle, knocking him to his knees; and that defendant then

"stomped" him in the face and throat, hit him with his fists and struck him again with a wine bottle, after which he moved no more. Chester Brooks testified that deceased did not strike the defendant at all. Both men were of approximately the same height, weight and age.

In defendant's statement made to the sheriff of Yuma County on September 3, 1957, which was introduced in evidence by the state, the defendant stated that "we were all wined up", and that he and the deceased had a "heck of an argument", that deceased had "got [him] a good lick on the throat", and that he had shown one of the officers a blue spot on his leg. He also stated that the deceased had struck his head on a large timber on the floor of the car when he "took him by the foot and slung him over there". The medical testimony showed that deceased probably had died instantly when a skull fracture pushed a section of bone into the brain tissue.

The two Brookses and defendant sat around drinking the remainder of the wine and then, deciding that the deceased must be dead, defendant got William and Chester Brooks to help him throw the body over the side of the car because, as he stated, "As drunk as I was I couldn't possibly pick him up". The Brookses testified that they were now very much afraid of the defendant, too much so to leave the train or to refuse to obey him. The body was found about fifty-one miles east of Yuma. The

defendant was riding in the same car when he was apprehended at Willcox several hours later.

The trial court instructed the jury on second degree murder and manslaughter, and submitted proper verdicts for each offense. The defendant contends that the failure of the trial court to instruct the jury on the effect of voluntary intoxication on the intent of the defendant to commit murder is reversible error where there is sufficient evidence of such intoxication introduced at the trial.

At the conclusion of the evidence counsel for defendant made the following request of the court:

Mr. Garcia: "We rest, your Honor. Before we proceed with the argument I would like to make two requests, of course, in the absence of the jury, but I can cite them in here under the statute by just giving the numbers."

The Court: "Are your requests written up?"

Mr. Garcia: "I didn't have time. The book was here all night. It is in accordance with the statute only on the ' manslaughter question and the intoxication phase. I know you have given these instructions before."

The court then excused the jury, and counsel for defendant again stated:

Mr. Garcia: "May the reporter take these as having been requested, such an instruction on intoxication. * * *"

■ We believe counsel for defendant complied with Rule 274, Rules of Criminal Procedure, 17 A.R.S., which provides:

"Requests for instructions

"Either party may request the giving of particular instructions. Such request *may be oral* unless the court directs it to be in writing." (Emphasis supplied.)

There is no question that the requested instruction referred to A.R.S. § 13–132, which reads:

"Effect of intoxication; consideration by jury

"No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition, but when the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time in determining the purpose, motive or intent with which he committed the act."

The record does not show that the requested instruction on the effect of voluntary intoxication on the intent to commit a crime was refused, and apparently all parties concerned believed that the court would give such an instruction, and as remarked by the state "the Court may have omitted the instruction through oversight."

■ The defendant was charged and tried for murder in the second degree, which is defined as the unlawful killing of a human being with malice aforethought. The malice which is an essential element to second degree murder means that condition of the mind which prompts one to do a wrongful act intentionally, without legal justification or excuse. Bennett v. State, 15 Ariz. 58, 136 P. 276; Anderson v. Territory, 9 Ariz. 50, 76 P. 636; Strickland v. State, 37 Ariz. 368, 294 P. 617; A.R.S. § 13–451.

■ It is a well-settled, general rule that voluntary drunkenness at the time a crime is committed is no defense, Brimhall v. State, 31 Ariz. 522, 255 P. 165, 53 A.L.R. 231, and while mere drunkenness does not excuse an offense it may produce a state of mind in the accused which incapacitates him from forming or entertaining a malicious intent or that "malice aforethought" which is an essential element of murder in the second degree. Such voluntary intoxication or drunkenness is to be taken into consideration in determining the existence or non-existence of malice aforethought, which distinguishes murder from manslaughter.

■ The record in this matter reveals that there was ample evidence of the in-

toxication of the defendant at the time of killing to present a question of fact for the jury. A careful review of the evidence indicates that on August 28, 1957, when the defendant first met the deceased, he had a quart of wine and shortly thereafter two quarts of wine were purchased with the money of deceased and were promptly consumed. Later in the same day, when William and Chester Brooks arrived, a half-gallon jug of wine was purchased by Chester Brooks and was consumed by the party of four on the way to Yuma. The next morning in Yuma the deceased and William Brooks purchased a quart and two pints of wine; a few hours later the Brookses purchased another half gallon of wine, all of which was consumed by the parties; and later in the day a final purchase was made of another half gallon of wine. This evidence indicates that the defendant helped consume a total of two and three-fourths gallons or eleven quarts of wine on the day of the killing (August 29th) and the day preceding it (August 28th), plus an undisclosed amount on August 27th, as the defendant was suffering from the effects of previous intoxication at the time he first met deceased. The defendant had the right to have the jury, under proper instructions, consider these facts in determining the malice or lack of malice with which he committed the act. Cf. Rascon v. State, 47 Ariz. 501, 57 P.2d 304; and for a general statement of the rule see 23 C.J.S. Criminal Law § 1201; 41 C.J.S. Homicide § 370; 26 Am.Jur., Homicide, § 118.

A mere reading of A.R.S. § 13–132, supra, with proper caution against considering intoxication as an excuse, would have informed the jury what weight to give the evidence of intoxication in connection with its consideration of all other evidence pertinent to the question of the degree of the offense. The defendant was deprived of the important right, which the law accorded him, to have the jury pass on the truthfulness of his story, and, if they believed that he was intoxicated to any extent to say whether such intoxication prevented him from entertaining the malice necessary to constitute murder in the second degree, and if so, would reduce the offense to manslaughter.

It was the duty of the trial court, after counsel for defendant properly requested an instruction on the intoxication of defendant at the time of the offense charged, to inform both the state and the defendant its ruling on the proposed request; and we believe that the failure of the trial court to indicate that it refused to give the instruction, and the absence of any objection to such an instruction by the state, left the impression with both parties that it would be given. Doubtless the failure to give such an instruction was through inadvertence and oversight on the part of the learned trial court. We further believe that because the court did not refuse the in-

struction it indicates that the trial judge had satisfied himself that the evidence of intoxication was sufficient to put that question for the determination of the triers of the facts.

We have considered the several other assignments made by the defendant and find no merit to any of them.

We hold that the trial court committed prejudicial and reversible error in failing to instruct the jury in accordance with A.R.S. § 13–132, supra.

Judgment reversed and new trial ordered.

UDALL, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.