481 P.2d 861

**STATE of Arizona, Appellee,**

**v.**

**David P. CONTRERAS, Appellant.**

**No. 2121.**

Supreme Court of Arizona,
In Division.
March 5, 1971.

Gary K. Nelson, Atty. Gen., Phoenix, Robert R. Bean, Pinal County Atty., Florence, for appellee.

William Craig Haus, Apache Junction, for appellant.

UDALL, Justice:

David P. Contreras, hereinafter referred to as the defendant, was originally charged with first-degree murder, pursuant to A.R. S. § 13-451, in connection with the death of one Miguel Diaz. Defendant was tried

in the Superior Court of Pinal County and convicted of involuntary manslaughter. He thereupon was sentenced to serve a term of not less than four nor more than five years in the Arizona State Prison at Florence. From the conviction and imposition of sentence defendant appeals to this Court.

The facts surrounding this case are as follows: Defendant and a friend of sorts, Pat DeLozier, set out from the defendant's apartment to Julio's Barber Shop, where both men got a haircut. There is evidence that defendant had been drinking prior to this time. The two men then drove to Maricopa to visit with DeLozier's father. During their journey to Maricopa and en route back to Eloy defendant stopped several times to purchase alcoholic beverages; the bulk of which he proceeded to consume. Upon returning to Eloy, DeLozier drove to the Underwood Apartments, the cotton-camp where defendant resided. As they drove into the camp Miguel Diaz, the victim, approached the vehicle on the driver's side and began to converse with DeLozier. During the course of this conversation defendant got out of the car and walked over to where Diaz was standing. Almost immediately a mutual fight ensued and after several minutes of exchanging blows Diaz was rendered unconscious. Defendant then walked to his apartment and passed out, leaving Diaz lying out in the street. When police arrived they found the accused lying on the ground near his cabin. He was arrested for being drunk and disorderly. Diaz, meanwhile, was taken to the Pinal County General Hospital where he died three days later as a result of injuries sustained in the fight.

Following the preliminary hearing defendant was bound over to stand trial for first-degree murder. After the state had presented its case, defense counsel made a motion that the charge of first-degree murder be removed from the consideration of the jury; whereupon the trial judge reduced the charge to second-degree murder. This decision was apparently based on the state's failure to prove the homicide was committed with premeditation and deliberation and testimony introduced at trial indicated that defendant had been drinking excessively and in all probability was extremely intoxicated at the time the fight occurred. Defendant, himself, testified that he remembered nothing at all of the fight or the circumstances leading up to the fight. He testified that he remembered only that he drove off with Pat DeLozier to get a haircut and awoke to find himself in jail. The arresting officer's testimony strongly corroborated defendant's contention that he was extremely drunk.

Defendant's theory of approach at trial was that the victim might have died from causes other than the injuries inflicted by the defendant and for this reason the jury should have been allowed to consider the additional requested verdicts of aggravated assault and simple assault. The trial judge refused to give these additional verdicts, submitting only the following:

(1) Guilty of Murder—Second Degree
(2) Guilty of Voluntary Manslaughter
(3) Guilty of Involuntary Manslaughter
(4) Not Guilty

The sole issue on appeal is whether the lower court should have allowed the jury to consider the verdicts of aggravated assault and simple assault, in addition to the four verdicts already given.

The law is well-settled that while voluntary drunkenness, at the time a crime is committed, is no defense to prosecution and conviction it may produce a state of mind in the accused

"* * * which incapacitates him from forming or entertaining a malicious intent or that 'malice aforethought' which is an essential element of murder in the second degree. Such voluntary intoxication or drunkenness is to be taken into consideration in determining the existence or non-existence of malice aforethought, which distinguishes murder from manslaughter." State v. Hudson, 85 Ariz. 77 at 80, 331 P.2d 1092 at 1095 (1958). See also: State v. Saun-

ders, 102 Ariz. 565, 435 P.2d 39 (1967); A.R.S. § 13–132.

The record reveals there was sufficient evidence of defendant's state of intoxication at the time of the homicide to present a question of fact for the jury as to whether defendant was capable of entertaining a malicious intent or the malice aforethought required for conviction of second-degree murder. The trial court, therefore, properly instructed the jury as to the possible verdict of manslaughter.

 With regard to the additional requested verdicts of aggravated and simple assault we feel the trial judge justifiably refused to submit them to the jury. He was correct in instructing the jury only as to the various degrees of criminal homicide since the facts unequivocally show that the victim died as a direct consequence of the assault. Had there been any substantial evidence that the victim's death resulted from a cause other than defendant's assault, the trial court would have been in error in failing to give the additional verdict forms and instructions. In a homicide prosecution the trial court is duty-bound to instruct the jury on every grade of the offense which the evidence, adduced at trial, will support. Conversely, the trial court need not instruct the jury as to other grades of the offense which the evidence indicates the accused could not be guilty of. State v. Madden, 104 Ariz. 111, 449 P.2d 39 (1969); State v. Hickson, 104 Ariz. 218, 450 P.2d 408 (1969); State v. Prewitt, 104 Ariz. 326, 452 P.2d 500 (1969); State v. Schroeder, 95 Ariz. 255, 389 P.2d 255 (1964); Antone v. State of Arizona, 49 Ariz. 168, 65 P.2d 646 (1937); 17 A.R.S. Rules of Criminal Procedure, Rule 276.

The expert testimony of the state's pathologist, Dr. Thomas B. Jarvis, was unequivocal and uncontradicted:

"Q And what is your conclusion, Doctor?

"A In my opinion this man died as the result of multiple intracerebral hemorrhages of the brain resulting from impact injuries of the head.

"Q Is there any other possible cause that you could see?

"A No, sir." Reporter's Transcript at page 105.

 No evidence was introduced at defendant's trial which would show that death resulted from any cause other than as stated by Dr. Jarvis. Mere speculation alone, without corroboration, is not sufficient. While it may be true that Diaz's death was hastened considerably because of certain diseases or physiological susceptibilities, such circumstances standing alone will not exonerate an accused's criminal act; nor will they constitute a defense. In State v. Hitchcock, 87 Ariz. 277 at 281, 350 P.2d 681 at 683–684 (1960), this Court, quoting a passage from Wharton on Homicide, Third Edition, p. 30, stated:

" * * * one whose wrongful act hastens or accelerates the death of another, or contributes to its cause, is guilty of homicide, though other causes co-operate. And he is guilty if his act was the cause of death, if the relation was causal, and the injured condition was not merely the occasion upon which another cause intervened not produced by the first injury, or related to it in any other than a causal way, then the person inflicting the injury is guilty of homicide."

Thus, as long as one's act directly causes or accelerates the death of another he will be held to account for his criminal act.

In State of Arizona v. Myers, 59 Ariz. 200, 125 P.2d 441 (1942), this Court had occasion to consider an appeal very similar to that in the present case. In *Myers*, supra, the defendant had struck his victim on the chin with his bare fist. Deceased fell backwards, landing on the back of his head. He died shortly thereafter. Defendant was tried and convicted of involuntary manslaughter. His attorney argued unsuccessfully that the court should have instructed the jury that defendant might be found guilty of "assault and battery, or a lesser offense than manslaughter." In re-

jecting his contention this Court stated that:

"* * * [t]he offense charged in the information is the lowest degree of homicide. In this case it was the result of the commission by defendant of an unlawful act not amounting to a felony and, under section 43–2904 [now A.R.S. 13–456, as amended], constitutes [in]voluntary manslaughter. As we have seen, the circumstances do not justify or excuse the assault. While an assault and battery are always included in an unlawful homicide, *they are not degrees of such offense requiring the court where death results to instruct that the defendant may be found guilty thereof.*" [Emphasis Added] 59 Ariz. at 207–208, 125 P.2d at 444.

Accordingly, we hold that the trial court's refusal to instruct the jury as to aggravated and simple assault was proper.

Judgment affirmed.

HAYS, V. C. J., and LOCKWOOD, J., concur.