690 P.2d 54

**STATE of Arizona, Appellee,**

v.

**Scott Drake CLABOURNE, Appellant.**

**No. 5807.**

Supreme Court of Arizona,
In Banc.

Oct. 31, 1984.

Robert K. Corbin, Atty. Gen., by William J. Schafer III and Diane M. Ramsey, Asst. Attys. Gen., Phoenix, for appellee.

R. Lamar Couser, Tucson, for appellant.

CAMERON, Justice.

Defendant, Scott Drake Clabourne, was convicted by a jury on 23 November 1982 of first degree murder, A.R.S. § 13–1105, kidnapping, A.R.S. § 13–1304, and three counts of sexual assault, A.R.S. § 13–1406. The trial court entered a judgment of guilty on all counts and sentenced defendant to death for the murder, A.R.S. § 13–703; fourteen years for the kidnapping, §§ 13–701, –702; and fourteen years for each of the sexual assault charges, § 13–604(G) and §§ 13–701, –702, each to run concurrently with each other and with the kidnapping charge. Defendant's conviction was automatically appealed to this court. We have jurisdiction pursuant to Ariz. Const. Art. 6, § 5(3) and A.R.S. §§ 13–4031 and 13–4035. We affirm.

We must consider the following issues:

1. Should the defendant's confession have been suppressed?
2. Should the defendant have received additional pretrial psychiatric evaluations for the purpose of determining his sanity at the time he committed the crime?
3. Should the trial court have granted defendant's motion to suppress certain photographs as being gruesome and inflammatory?
4. Did the trial court properly refuse to strike four of the jurors for cause?
5. Was a statement made by one of the veniremen so inflammatory as to disqualify the entire panel?
6. Should the trial court have directed a verdict of not guilty?
7. Should the jury have been instructed as to the elements of murder in the second degree?
8. Was the trial court correct in granting defendant's request not to review the pre-sentence report and, if so, should the court have ordered a new report *sua sponte?*
9. Should the trial court have ordered a pre-sentence diagnostic evaluation and mental health examination to determine defendant's competence to be sentenced?
10. Should the trial court have granted defendant's request for a psychological evaluation for purposes of mitigation?
11. Is the Arizona death penalty constitutional?
12. Was the death penalty properly imposed?

The facts follow. On the evening of 18 September 1980, Laura Webster, a student at the University of Arizona, entered the Green Dolphin Bar with a friend. Shortly after arriving there, defendant, Scott Clabourne, and Larry Langston approached her. They talked with her for approximately twenty minutes after which all three left the bar. The next day, Ms. Webster's body was found near the Santa Cruz River. She was naked and wrapped in a bloody sheet. A blue and white bandanna was tied tightly around her neck. An autopsy revealed that the victim had been strangled and then stabbed twice in the chest. There was also evidence of oral, anal and vaginal intercourse just prior to death.

No arrests were made for over a year. In August of 1981, defendant's girlfriend, Shirley Martin, contacted Detective Luis Bustamonte. She informed the detective that defendant had told her that he had killed a woman he had met in a bar. He told her that he had gone there with two friends who had ordered him to kill her. Clabourne told Martin that his friends had

forced him to ingest some drugs which caused him to lose control so that he was unable to resist their command.

On 12 October 1981 the Detective interviewed defendant at the Pima County Jail, where defendant was incarcerated on another charge. After receiving his *Miranda* warnings, defendant agreed to discuss the murder. He told the Detective that on the evening of 18 September 1980, he was asleep at the Salvation Army halfway house where he had been staying. Larry Langston and a man that Clabourne knew as Bob, later identified as Ed Carrico, woke him up and the three of them drove to the Green Dolphin Bar. There they met Laura Webster and convinced her to go to a cocaine party with them. They all left and began to drive around. Langston stopped the car, pulled the victim out and beat her. He threw her back into the car and they drove to where Langston had been staying. During this time Miss Webster began pleading with Clabourne to protect her.

Once inside the house, the men forced the victim to remove her clothes and serve them drinks. Langston continued to beat her and all three men raped her. Clabourne claimed that she consented to relations with him. A prison guard testified at the trial that he overheard the defendant state "Yeah. I raped her. She didn't want it but I know she liked it." They were inside the house for approximately six hours.

At the end of the evening, Langston told defendant to kill the woman. Clabourne maintained that he was in fear of his own life and wanted to let her escape but was scared Langston would kill him. He strangled her with a bandanna that he carried in his pocket. He then stated that Langston handed him a knife, he stabbed her twice and the three men wrapped her in a sheet and threw her in the Santa Cruz riverbed. It appeared from the autopsy, however, that she had been stabbed after she was wrapped in the sheet.

An information was filed on 15 October 1981. Defendant was found competent to stand trial by court-appointed psychiatrists

Drs. John S. LaWall and Edward S. Gelardin. Because a defense of insanity was interposed, the two doctors also examined defendant concerning Clabourne's mental state at the time of the incident. Both men testified that defendant was legally sane at the time of the offense. Dr. Sanford Berlin, who had treated defendant during his adolescence for a number of mental problems, also testified. From his convictions and sentences, defendant appeals.

## THE VOLUNTARINESS OF DEFENDANT'S CONFESSION

Prior to trial, defendant filed a motion to suppress his confession. He gave two reasons for the request. First, he alleged that he had made an involuntary waiver of his fifth and sixth amendment rights. Second, he argued that because he was represented by counsel on another matter, the detectives should neither have questioned him nor have accepted his waiver without his attorney present. The trial court rejected both arguments and allowed the confession to be admitted into evidence. Defendant now alleges that this was in error.

We deal with defendant's second argument first. Defendant is essentially asking the court to adopt the "New York" rule with respect to a waiver of counsel. According to that view, once a defendant has been assigned counsel, he cannot waive counsel's assistance without that attorney's presence. Additionally, if he has received an attorney on an unrelated charge, he still cannot be questioned nor may he waive counsel's assistance without that attorney being present. *See, e.g., People v. Bartolomeo*, 53 N.Y.2d 225, 440 N.Y.S.2d 894, 423 N.E.2d 371 (1981). Therefore, defendant argues that because he was represented by counsel on another matter, the detectives should not have had any contact with him unless counsel was present. We have, however, refused to adopt that view, *State v. Richmond*, 114 Ariz. 186, 191, 560 P.2d 41, 46 (1976), cert. denied, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977), and see no reason for changing our position. We reaffirm our holding that "law enforce-

ment officers are not under a constitutional duty to contact a lawyer for the accused if he makes a voluntary waiver of that right." *Id.*

■ We turn, therefore, to the question of that waiver. In Arizona, confessions are prima facie involuntary and the state must show by a preponderance of the evidence that they were freely and voluntarily made. *State v. Arnett*, 119 Ariz. 38, 42, 579 P.2d 542, 546 (1978). Defendant argues that he was taking heavy doses of the prescription drug Thorazine and had exhibited bizarre behavior indicative of mental illness. In light of this, he argues, the state could not sustain its burden of proof. We disagree. The test for voluntariness in cases where a defendant is under the influence of narcotics or has mental disabilities is whether these problems render him unable to understand the meaning of his statements. *State v. Porter*, 122 Ariz. 453, 595 P.2d 998 (1979). We have listened to the taped confession and find no indication that defendant did not understand the meaning of his statements. He received his *Miranda* warnings and was given time to think about whether he wanted to waive his constitutional protections. Defendant stated that he understood his rights, and after a pause agreed to discuss the murder. He was responsive to all questions asked. He appeared to be coherent and aware of the import of his statements. There was sufficient evidence to indicate that defendant's waiver of his rights was intelligently, knowingly, and voluntarily made, and the court did not abuse its discretion in denying defendant's motion to suppress.

## THE REQUEST FOR ADDITIONAL MEDICAL EXAMINATION

Pursuant to Rule 11.3, Arizona Rules of Criminal Procedure, 17 A.R.S., the trial court appointed two psychiatrists, Dr. LaWall and Dr. Gelardin, for the purposes of determining defendant's competence to stand trial and his state of mind at the time of the offense. Defendant was dissatisfied with the examinations conducted by the two court appointed psychiatrists and requested that additional psychiatrists be appointed. The trial court denied the request and defendant now appeals that denial claiming it prejudiced his ability to conduct his insanity defense.

■ Defendant points to Rule 11.3(f) and A.R.S. § 13–4013(B), which authorize a court to appoint additional experts. Rule 11.3(f) states:

The court may, in its discretion, appoint additional experts and order the defendant to submit to physical, neurological or psychological examinations, when advised, by an appointed expert that such examinations are necessary to an adequate determination of the defendant's mental condition.

This rule was intended to give the trial court the authority to appoint additional experts when those already appointed request assistance. *See* Comment to Rule 11.3(f). Neither doctor requested additional assistance. The rule does not apply.

■ A.R.S. § 13–4013 grants the court authority in capital cases to appoint "such investigators and expert witnesses as are reasonably necessary adequately to present his [defendant's] defense at trial and at any subsequent proceeding." Whether additional experts are reasonably necessary is a decision within the sound discretion of the trial court. *State v. Greenawalt*, 128 Ariz. 150, 155–56, 624 P.2d 828, 833–34, cert. denied, 454 U.S. 882, 102 S.Ct. 364, 70 L.Ed.2d 191 (1981); *State v. Gretzler*, 126 Ariz. 60, 90, 612 P.2d 1023, 1053 (1980). In order to find an abuse of discretion, we must determine that the denial or restriction of investigative funds substantially prejudiced the defendant. *Gretzler*, supra, at 90, 612 P.2d at 1053.

■ In the instant case, the examinations conducted by Drs. LaWall and Gelardin were not so cursory or uninformed as defendant would have us believe. Although Dr. LaWall only interviewed defendant for forty minutes, he had had contact with defendant prior to that time. He was the Pima County Jail psychiatrist and

had examined the defendant on several occasions and had prescribed medication for him. He was aware that defendant had a history of psychological trouble and had reviewed his juvenile and adolescent medical files. Dr. Gelardin was also aware of defendant's childhood problems. Furthermore, the two doctors interviewed defendant separately and reached the same conclusion, that he was legally sane when he had committed the crimes. We do not believe the trial court abused its discretion by denying defendant's motion for an additional medical examination.

## ADMISSIBILITY OF INFLAMMATORY PHOTOGRAPHS

■■■■ The trial court admitted into evidence, over defense objection, approximately twenty eight pictures of the victim. A number of these showed bruises on her body and several showed the wounds caused by the strangulation and stabbing. Defendant alleges that these pictures were unnecessary and prejudicial to the defendant. In all there were 34 photographs of the victim. We have reviewed the photographs and, with only one exception, do not find them to be particularly gruesome or inflammatory. We would agree that the number of photographs admitted was excessive, though under the facts in this case not prejudicial. We have stated that:

> [G]ruesome or inflammatory evidence may be admitted if it is material to some aspect of the case. * * * In such circumstances, the trial court must determine whether the probative value of the evidence outweighs its potential to prejudice the jury.

*State v. Summerlin*, 138 Ariz. 426, 433, 675 P.2d 686, 693 (1983), (quoting *State v. Gerlaugh*, 134 Ariz. 164, 169, 654 P.2d 800, 805 (1982), supplemented in 135 Ariz. 89, 659 P.2d 642 (1983)). Gruesome photographs may be admitted to corroborate the state's theory of whether and how the crime was committed, to identify the deceased, to show the location of mortal wounds and to aid the jury in understanding testimony. *See State v. Clark*,

126 Ariz. 428, 433, 616 P.2d 888, 893, cert. denied, 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980). Whether the prejudicial impact of the evidence substantially outweighs its probative value, Rule 403, Arizona Rules of Evidence, is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Clark*, supra, at 434, 616 P.2d at 894. In the instant case, we do not believe the prejudicial impact outweighs the probative value of the evidence.

■■■■ Defendant argues, however, that because he was willing to stipulate to identification and cause of death, there was no reason to admit these photographs. The same argument was made in *State v. Ferrari*, 112 Ariz. 324, 541 P.2d 921 (1975). There the trial court admitted a number of photographs of the victim into evidence despite the fact that the defendant was willing to concede that the victim died of a gun shot wound to the head, was beaten, and was found nude with a belt tied around one of his hands. The state argued that the photographs were probative of malice, were useful to corroborate testimony, to establish the circumstances of the victim's death and to illustrate or explain testimony. This court held that the photographs were admissible. *See also State v. Chatman*, 109 Ariz. 275, 508 P.2d 739, cert. denied, 414 U.S. 1010, 94 S.Ct. 373, 38 L.Ed.2d 247 (1973) (photographs of the victim were properly admitted despite the fact that the defendant was willing to stipulate to identification and that the murder was committed in a brutal fashion). The same circumstances exist here. The pictures, including the one we believe to be somewhat gruesome, were used not only to explain testimony relating to the discovery of the body and cause of death, but were also probative of malice and premeditation to show first-degree murder. Although we believe the number of photographs may have been excessive, we find no abuse of discretion by the trial court in admitting them.

## CHALLENGE TO THE VOIR DIRE

Defendant raises two arguments concerning jury selection. First, he argues

that the judge erred in refusing to strike four jurors for cause. Next, he argues that the judge should have granted his motion to have the entire panel disqualified.

Defendant requested that three of the jurors be removed because of inflexible attitudes toward the insanity defense. He argued that the fourth juror was biased by the fact that she was a lawyer and had friends in law enforcement agencies.

■■■■ The fact that a juror possesses certain opinions or preconceived ideas does not necessarily render that juror incompetent to decide fairly and impartially. *State v. (Ricky) Tison*, 129 Ariz. 526, 533, 633 P.2d 335, 342 (1981), cert. denied, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). He may serve if he is willing to put his opinions aside and weigh the evidence as the law requires. *See State v. Greenawalt*, 128 Ariz. 388, 394, 626 P.2d 118, 124 (1981), cert. denied, 454 U.S. 848, 102 S.Ct. 167, 70 L.Ed.2d 136 (1981). The trial judge may use the voir dire to convince a juror of this responsibility, thereby rehabilitating an initially suspect venireman. See *State v. Clayton*, 109 Ariz. 587, 593, 514 P.2d 720, 727 (1973). The trial judge's decision will not be disturbed absent an abuse of discretion. *State v. Rose*, 121 Ariz. 131, 139, 589 P.2d 5, 13 (1978).

■■■■ In the instant case the judge conducted a separate voir dire for those jurors who had voiced concern regarding the insanity defense. He dismissed those jurors who had stated that they would be unable to put their biases aside. The three jurors complained of agreed that they would be willing to follow the law as the judge explained it. As to a juror having connections with the law, the record does not clearly indicate the name of the juror having acquaintances with members of law enforcement agencies; however, all those asked stated that they would have no problem viewing the evidence fairly. Because the record does not reflect the requisite bias, we find that the judge's refusal to strike these jurors was proper.

■■■ Defendant also made a motion, which was denied, to strike the entire panel. During the selection process, one of the jurors blurted out that "he thought the entire defense was a lot of baloney." Defendant contends that because the potential juror's comment was in front of all the veniremen, it prejudiced the entire panel, and the only remedy was to disqualify it and request a new one. We do not agree.

■■■ A defendant has the right to a fair and impartial jury. U.S. Const. Amend. VI, Ariz. Const. Art. 2, § 24. Rule 18.4(a), Arizona Rules of Criminal Procedure, 17 A.R.S., provides that "[e]ither party may challenge the panel on the ground that in its selection there has been a material departure from the requirements of law." The moving party must affirmatively demonstrate, however, that a fair and impartial jury was not secured or that some material violation occurred. *State v. Greenawalt*, 128 Ariz. 150, 167, 624 P.2d 828, 845 (1981). Because the voir dire is within the judge's discretion, defendant must also demonstrate that the trial court abused its discretion in selecting the jury before we will overrule the trial court. *State v. Montano*, 136 Ariz. 605, 607, 667 P.2d 1320, 1322 (1983). In the instant case, it is unclear whether any of the jurors heard the remark. It was not recorded by the court reporter and the judge stated that he had started talking at the same time as the juror. Also, the comment was made while the judge was asking all those who were uncomfortable with the insanity defense to raise their hands. They were all interviewed separately and the juror who made the statement was removed for cause. We find no error.

## FAILURE TO INSTRUCT ON SECOND DEGREE MURDER

At the close of the trial, defendant requested that the judge instruct on second degree murder. The judge denied the request. Defendant now asserts that this denial constitutes reversible error.

In capital cases, the trial judge must instruct on those lesser included offenses that the evidence will support. *State v. Smith*, 138 Ariz. 79, 84, 673 P.2d 17, 22 (1983); *State v. Gerlaugh*, 134 Ariz. 164, 169, 654 P.2d 800, 805 (1982). Conversely, the trial judge need not instruct as to those lesser included offenses which are not supported by the evidence. *State v. Contreras*, 107 Ariz. 68, 70, 481 P.2d 861, 863 (1971). To warrant the charge of second degree murder, the evidence reasonably construed must tend to show a lack of premeditation and deliberation. *"The presence of such evidence* is the determinative factor." *State v. Sorensen*, 104 Ariz. 503, 507, 455 P.2d 981, 985 (1969); *see. also Gerlaugh*, supra, 134 Ariz. at 169, 654 P.2d at 805. The term premeditation means that the defendant "acts with either the intention or the knowledge that he will kill another human being, when such intention or knowledge precedes the killing by a length of time to permit reflection. An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion." A.R.S. § 13–1101(1).

In the instant case, defendant presented no evidence to suggest that his actions had been committed in the heat of passion or as the result of a quarrel. Instead he admitted that his friends had told him to kill the victim. His girlfriend stated further that he had been sitting in the car with the victim and had explained that he had no choice. It is obvious defendant had sufficient time to reflect upon his actions. We hold, therefore, that the trial judge correctly found that the evidence did not support an instruction on the elements of second degree murder.

## SUFFICIENT EVIDENCE OF SANITY

Defendant next argues that the trial court should have granted his request for a Judgment of Acquittal pursuant to Rule 20, Arizona Rules of Criminal Procedure, 17 A.R.S. Defendant contends that the state failed to present evidence to prove defendant sane beyond a reasonable doubt. At the time of the crime, the law required that a defendant asserting an insanity defense need only present evidence sufficient to raise a reasonable doubt concerning his sanity. The prosecution then had the burden of proving sanity beyond a reasonable doubt. *State v. Overton*, 114 Ariz. 553, 562 P.2d 726 (1977). Our legislature has since changed the burden of proof to require the defendant to prove his insanity by clear and convincing evidence. A.R.S. § 13–502(B). We will, however, decide this issue under the prior law. *State v. Coconino County*, 139 Ariz. 422, 678 P.2d 1386 (1984); A.R.S. § 1–244.

The defendant was presumed sane. Once the defendant introduced evidence sufficient to raise the issue of sanity, the burden shifted to the state to prove sanity beyond a reasonable doubt. *State v. Vickers*, 129 Ariz. 506, 512, 633 P.2d 315, 321 (1981). A Rule 20 Judgment of Acquittal shall be granted if there is "no substantial evidence to warrant a conviction." We have defined substantial evidence to mean "more than a scintilla and is such proof as a reasonable mind would employ to support the conclusion reached." *State v. (Raymond) Tison*, 129 Ariz. 546, 553, 633 P.2d 355, 361 (1981), cert. denied, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982). In this case the issue is whether there was sufficient evidence of sanity to allow a reasonable mind to so find.

In the state's case in chief two psychiatrists, Dr. Gelardin and Dr. LaWall, testified. Both stated that, at the time of the murder, defendant understood the nature and quality of his actions and knew right from wrong. Dr. Gelardin testified that he was aware that defendant had ingested certain intoxicants including alcohol and seconal. He stated, however, that there was no evidence that defendant was out of touch with reality or that he had been acting like an automaton. In light of the evidence presented, we hold that these facts could lead a reasonable mind to the conclusion that the defendant was sane at the time he committed the crime. The trial judge was therefore under no obligation to enter a directed verdict. We find no error.

## FAILURE TO ORDER A PRE-SENTENCE REPORT SUA SPONTE

As required by Rule 26.4, Arizona Rules of Criminal Procedure, 17 A.R.S., the judge ordered the preparation of a pre-sentence report. After it had been prepared, defendant asked the court not to review it in imposing sentence. Defendant argued that the report was prejudicial and had been prepared in violation of his fifth amendment right against self-incrimination. The court granted the request and proceeded to sentence the defendant on the basis of the evidence presented at trial and at the sentencing hearing. Defendant now argues that the court should have ordered a new report *sua sponte*. The state cross appealed, arguing that the court should have denied the original request to ignore the pre-sentence report.

 At first we note that we agree with the state that it was error not to review the pre-sentence report prior to sentence. The court should have all available, relevant information before it when imposing sentence. Even though the trial court has heard the evidence at trial, the pre-sentence report serves an important function in providing the sentencing judge with further information concerning the character and background of the defendant, which facts are helpful in imposing a proper sentence. *See State v. Smith*, 107 Ariz. 218, 220–21, 484 P.2d 1049, 1051–52 (1971). This information aids the court in tailoring the sentence to the individual. *State v. Miller*, 120 Ariz. 224, 228, 585 P.2d 244, 248 (1978). We have reviewed the pre-sentence report, however, and find no prejudice to the defendant in the failure of the sentencing judge to review that report. To the contrary, we find little in the pre-sentence report which would be of help to the defendant. Based on the evidence presented at trial, the judge imposed an appropriate punishment in the matter. The judge was not required to order a new pre-sentence report *sua sponte*.

 Also, we have stated that a party's failure to make a timely objection to a sentencing procedure waives that point for appeal. *See, e.g., State v. Evans*, 124 Ariz. 526, 606 P.2d 16, cert. denied, 449 U.S. 891, 101 S.Ct. 252, 66 L.Ed.2d 119 (1980); *State v. Bailey*, 120 Ariz. 399, 586 P.2d 648 (App. 1978); *State v. Pakula*, 113 Ariz. 122, 547 P.2d 476 (1976), rev'd on other grounds, 124 Ariz. 24, 601 P.2d 1060 (1979). In the present case defendant neither requested a new report nor objected when the judge proceeded to sentence him without a pre-sentence report. We find no error.

## REQUEST FOR AN ADDITIONAL PRE-SENTENCE EXAMINATION

Defendant requested, prior to sentencing, that the judge order a pre-sentence diagnostic evaluation and mental health examination. He claimed that he had become depressed and non-responsive after trial and that an examination would have revealed that he was not competent to be sentenced. He also contended that the report would present evidence that would demonstrate mitigating factors concerning the defendant's state of mind for the purpose of the sentencing hearing. The trial court denied both requests.

 The requirement that a defendant be competent to be sentenced is found in Rule 11.1, Arizona Rules of Criminal Procedure, 17 A.R.S., which states:

A person shall not be * * * sentenced or punished for a public offense while, as a result of mental illness or defect, he is unable to understand the proceedings against him or assist in his own defense.

A court must order such an examination to determine defendant's competency to be sentenced if reasonable grounds for an examination exist. *State v. Ortiz*, 117 Ariz. 264, 266, 571 P.2d 1060, 1062 (App.1977); *State v. Ohta*, 114 Ariz. 489, 491, 562 P.2d 369, 371 (1977).

 Rule 26.5, Arizona Rules of Criminal Procedure, 17 A.R.S., provides in pertinent part that "[a]t any time before sentence is pronounced, the court may order the defendant to undergo mental health examination or diagnostic evaluation. * * *" Prior to sentencing, a defendant convicted

of first degree murder receives an aggravation-mitigation hearing pursuant to A.R.S. § 13–703 to determine whether the death penalty is warranted. Among the mitigating circumstances the trial court must consider is whether "[t]he defendant's capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirement of law was significantly impaired, but not so impaired as to constitute a defense to prosecution." A.R.S. § 13–703(G)(1). It follows then that if the trial court feels it needs additional information to determine whether this mitigating factor exists, it has the power to require that defendant undergo an examination. Rule 26.5 uses the word "may," placing the decision to order tests within the judge's discretion. *Cf. State v. Woods*, 114 Ariz. 385, 390, 561 P.2d 306, 311 (1977).

■ Here the trial court did not abuse its discretion. The judge contacted Dr. LaWall and asked him to examine defendant to determine whether a full competency hearing was necessary. Dr. LaWall determined that defendant was competent and it was on this basis that the judge denied the request. The trial judge had the reports prepared by the psychiatrists and the trial testimony. The thrust of the testimony was directed at the defendant's mental state. The trial judge also indicated his willingness to consider any arguments that defendant's counsel might make, concerning defendant's mental state, at the sentencing hearing. The trial judge was not required to order additional tests. We find no error.

## IS ARIZONA'S DEATH PENALTY STATUTE CONSTITUTIONAL

■ Defendant argues that the Arizona Death Penalty Statute, A.R.S. § 13–703, is unconstitutionally vague. We have addressed and rejected this argument on a number of occasions, *see, e.g., State v. Jeffers*, 135 Ariz. 404, 432, 661 P.2d 1105, 1133, cert. denied, —— U.S. ——, 104 S.Ct. 199, 78 L.Ed.2d 174 (1983); *State v. Zaragoza*, 135 Ariz. 63, 68, 659 P.2d 22, 27, cert. denied, —— U.S. ——, 103 S.Ct. 3097, 77

L.Ed.2d 1356 (1983); *State v. Gretzler*, 135 Ariz. 42, 50, 659 P.2d 1, 9, cert. denied, 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), and continue to do so here.

## WAS THE DEATH PENALTY PROPERLY IMPOSED

We next turn to the sentence itself. A.R.S. § 13–703 requires a sentencing court to evaluate all aggravating and mitigating circumstances prior to sentencing. "[I]f the court finds one or more of the aggravating circumstances * * * and * * * no mitigating circumstances sufficiently substantial to call for leniency," *id.*, it must impose the death sentence. This court will, in all death cases, make an independent review of the facts to determine for itself the aggravating and mitigating factors. *State v. Smith*, 138 Ariz. 79, 85, 673 P.2d 17, 23 (1983); *State v. Richmond*, 136 Ariz. 312, 317, 666 P.2d 57, 62, cert. denied, —— U.S. ——, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983).

■ The trial judge found one aggravating circumstance: that the defendant had committed the offense in an especially heinous, cruel or depraved manner. A.R.S. § 13–703(F)(6). In defining those terms, this court has stated that cruelty involves pain and distress visited upon the victim. *Gretzler*, supra, 135 Ariz. at 51, 659 P.2d at 10. This distress includes mental anguish. *State v. Tison*, supra, 129 Ariz. at 543, 633 P.2d at 352. The terms "heinous and depraved" are concerned with the mental state and attitude of the perpetrator. *Gretzler*, supra, 135 Ariz. at 51, 659 P.2d at 10; *State v. Ceja*, 126 Ariz. 35, 39, 612 P.2d 491, 495 (1980). In *Gretzler*, we listed certain factors that lead to a finding of heinousness or depravity: apparent relishing of the murder by the killer, needless mutilation of the victim, senselessness of the crime and helplessness of the victim, and infliction of gratuitous violence on the victim. *Gretzler*, 135 Ariz. at 52, 659 P.2d at 11. We have found this last factor to exist when an assailant climbed on top of an already dead victim, hitting her in the face several times, causing addi-

tional wounds and bleeding. *State v. Jeffers*, supra. We also found a murder to be heinous and depraved when a defendant continued shooting his victim after it had become apparent that he was already fatally wounded. *Ceja*, supra.

■ Here, the murder was heinous, cruel and depraved. The victim suffered both mentally and physically. She was beaten and forced to undress and serve defendant and his friends drinks. In addition, she was raped over the course of a six hour period. She was obviously in great fear of her life as she begged defendant to protect her. The medical examiner testified that the victim had put up a tremendous struggle while being strangled, indicating a good deal of suffering. This evidence was sufficient to establish cruelty.

There was also sufficient evidence of gratuitous violence to support a finding of depravity and heinousness. The victim was near death after the strangulation and the stabbing was unnecessary to accomplish the murder. Still defendant stabbed her twice, once through the heart. We find that the killing was committed in a heinous and depraved manner.

■ Defendant suggested several possible grounds for mitigation at the sentencing hearing. First, he claimed that his "capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution." A.R.S. § 13–703(G)(1). He also offered his age, his troubled childhood and feelings of remorse as other factors to be taken into account.

Despite raising this factor, defendant presented no evidence that his mental capacity was sufficiently impaired so as to comply with the statute. At trial both psychiatrists testified that defendant understood what he was doing and was able to distinguish right from wrong. Neither found evidence of delusions or fantasies. Defendant presented a psychiatrist who had treated him during his adolescence.

The psychiatrist stated that defendant may have suffered from schizophrenia during childhood. He admitted, however, that he was unable to tell anything about defendant's state of mind during the commission of the crime.

■ Defendant also raised the existence of feelings of remorse as a mitigating factor. Even his counsel admitted that these feelings were minimal and we agree with the trial judge that they were not sufficient to constitute a mitigating factor.

■ Finally, defendant raised the fact that he was only twenty at the time of the offense, that he was born out of wedlock and that he had a history of childhood mental diseases which required him to be placed on Thorazine to control an aggressive personality. As to defendant's age, we have refused to hold this as a mitigating factor in instances where the defendants were the same age or younger than Clabourne. *See, e.g., State v. Gillies*, 135 Ariz. 500, 513, 662 P.2d 1007, 1020 (1983); *State v. Clark*, supra. We find here, as well, that age was not a mitigating factor sufficient to overcome the aggravating circumstances.

In arguing that his background constituted a factor calling for leniency defendant cited *Eddings v. Oklahoma*, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). We have previously stated that:

As the United States Supreme Court has noted, "Evidence of a difficult family history and of emotional disturbance is typically introduced by defendants in mitigation." While the high court stated that such evidence is "particularly relevant" in the case of a minor, it is suggested that relatively less weight may be accorded such evidence for an adult offender * * *. We agree. Although the evidence is relevant and has been considered in mitigation, we ascribe to adult offenders such as defendant a greater degree of personal responsibility for their actions than to minors involved in crime.

*Gretzler,* supra, 135 Ariz. at 58, 659 P.2d at 17 (citation omitted). We are unable to find any factors substantial enough to constitute mitigation.

 Nor can we find, as defendant alleges, that his sentence was disproportionate. Defendant argues that neither of his co-defendants, and particularly Langston, received the death penalty. Defendant seems to feel that racial animus may have played a part in the sentence he received; defendant was black, Langston was white and Carrico was Hispanic. We find, however, a different and legitimate reason for this disparate treatment. The defendant did the actual killing; he is the one who both strangled and stabbed the victim. Carrico and Langston did not participate in the actual killing.

In addition to considering defendant's arguments, this court will make an independent review to determine whether the sentence is excessive or disproportionate. We must compare this sentence with those imposed on similarly situated defendants in Arizona. A number of defendants have been sentenced to death where the only aggravating factor was that the murder was committed in an especially heinous, cruel and depraved manner. *See, e.g., State v. Chaney,* 141 Ariz. 295, 686 P.2d 1265 (1984); *State v. Smith,* 138 Ariz. 79, 673 P.2d 17 (1983); *State v. Gillies,* 135 Ariz. 500, 662 P.2d 1007 (1983). Additionally, we have found the death penalty appropriate in cases involving a similar degree of violence. *See, e.g., State v. Mata,* 125 Ariz. 233, 609 P.2d 48, cert. denied, 449 U.S. 938, 101 S.Ct. 338, 66 L.Ed.2d 161 (1980); *State v. Arnett,* 125 Ariz. 201, 608 P.2d 778 (1980); *State v. Evans,* supra. We do not find the sentence either excessive or disproportionate.

We have searched the record for fundamental error pursuant to A.R.S. § 13–4035, *Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Leon,* 104 Ariz. 297, 451 P.2d 878 (1969), and find none.

The conviction, judgment, and sentence of the defendant are affirmed.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and FELDMAN, JJ., concur.