NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ARNOLD RAY REESE, *Appellant*.

No. 1 CA-CR 14-0439
FILED 7-7-2015

Appeal from the Superior Court in Mohave County
No. S8015CR201201083
The Honorable Rick A. Williams, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Terry M. Crist III
*Counsel for Appellee*

Mohave County Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Andrew W. Gould and Judge Peter B. Swann joined.

**H O W E**, Judge:

¶1        Arnold Ray Reese appeals his convictions and sentences for child molestation. Reese argues that prejudicial comments from various veniremembers required the trial court to sua sponte declare a mistrial because the comments tainted the entire jury panel. Because Reese has failed to demonstrate prejudice from the alleged error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        In 2012, the State indicted Reese with 19 counts of various child molestation crimes. Before voir dire, the trial court read the entire indictment to the venire. The indictment described that Reese had molested two minor girls by engaging in oral sex with both girls and by touching one girl's vagina with his penis.

¶3        The prosecutor then conducted voir dire. A veniremember then interrupted, stating that she was "a survivor of incest in 1981. My father hung himself . . . . I'm getting upset." The court immediately excused the veniremember. The court then cautioned that "it's important also for the State and the defense to have a fair trial and for nothing really to be said that might prejudice the entire jury . . . ."

¶4        Another veniremember then stated, "I can't listen to this. I was involved back then, so I know what they're going through. And I've got a granddaughter that's going through it." When the court asked whether this veniremember could sit through trial, she stated that she could not: "[It's] [m]aking me sick to my stomach. I don't want to listen to [this trial because] . . . I was molested when I was young." The court subsequently excused the veniremember. The prosecutor concluded his remarks by stating that "we need a fair trial for everyone."

¶5        Reese's counsel then proceeded with voir dire. The trial court then asked whether the nature of the charges would prevent any other jurors from being fair and impartial. A veniremember answered, "Both of my grandchildren were sexually molested and raped multiple times by a family friend. And a week and a half ago my grandson just tried to commit suicide because of it." Another veniremember explained that "my stomach feels like I'm gonna—I just can't do it." A subsequent veniremember feared that she might cry during trial. The court subsequently excused those veniremembers.

¶6        A veniremember then claimed that he had "already figured out a verdict for what [he would] do," but the court interrupted him before

he could continue. Another veniremember said that her daughters went through a "similar" circumstance. The court excused these veniremembers as well.

¶7        A veniremember then stated that she "was sexually molested as a young child. . . .. My brother was [also] sexually molested and committed suicide because of it." Another veniremember stated that he had a niece that was "sexually molested for over a period of three of four years by two different stepfathers." A different veniremember indicated that he could not be fair because of the nature of the case and because he "had already made up [his] mind." The court subsequently excused these veniremembers.

¶8        Other veniremembers commented, "[My daughter was] molested by her stepfather," "I was raped when I was very young," "[I would] already hang the guy if I had the choice," "[I don't know whether I will] be able to give [the defendant] the benefit of the doubt," and "[this] just drives me nuts." The court subsequently excused these veniremembers.

¶9        When another veniremember said, "He's already guilty," the court excused him immediately. A different veniremember explained that a friend had been molested and she has "seen what [it has] done to her life and future after—when she's grown up and failed marriages." The court excused her as well.

¶10        The remaining veniremembers responded that they had heard the court's questions during voir dire and would not have answered "yes" to any of them. Reese's counsel then passed the entire venire for cause. The court finally reminded the jury to "decide the case only on the evidence received here in court."

¶11        At trial, Reese moved for a directed verdict on all counts. The court entered a directed verdict for all but three counts. The jury entered a guilty verdict on the three remaining counts. But the jury found that the State had not proven the aggravating factor that the victims experienced emotional harm. The court subsequently sentenced Reese to a life sentence. Reese timely appealed.

## DISCUSSION

¶12        Reese argues that prejudicial comments from various veniremembers required the trial court to sua sponte declare a mistrial because those comments tainted the entire jury panel. The State contends

that Reese has waived this argument on appeal by failing to object during voir dire and passing the panel for cause.

¶13         But Reese's failure to object the claimed error from which he now appeals requires this Court to review for fundamental error. *See State v. Garza*, 216 Ariz. 56, 63 ¶ 20, 163 P.3d 1006, 1013 (2007) (stating that a defendant who raised no objections at trial to the voir dire process but later raises the argument on appeal is reviewed for fundamental error). To prevail under fundamental review, a defendant must establish that (1) error exists, (2) the error is fundamental, and (3) the error caused him prejudice. *State v. Smith*, 219 Ariz. 132, 136 ¶ 21, 194 P.3d 399, 403 (2008).

¶14         A defendant "has a constitutional right to a fair and impartial jury." *State v. Greenawalt*, 128 Ariz. 150, 167, 624 P.2d 828, 845 (1981). This right, however, does not mean that the defendant "is entitled to any one particular jury." *State v. Lujan*, 184 Ariz. 556, 560, 911 P.2d 562, 566 (App. 1995). A defendant carries the burden of showing that remarks of excused jurors prejudiced others. *State v. Doerr*, 193 Ariz. 56, 61 ¶ 18, 969 P.2d 1168, 1173 (1998); *see State v. Clabourne*, 142 Ariz. 335, 344, 690 P.2d 54, 63 (1984) (holding a party moving to strike an entire jury panel "must affirmatively demonstrate that a fair and impartial jury was not secured or that some material violation occurred"). To carry this burden, the defendant must present "objective indications of jurors' prejudice." *Doerr*, 193 Ariz. at 61-62 ¶ 18, 969 P.2d at 1173-74. Arizona courts therefore do not assume that a veniremember's comment prejudiced the empaneled jurors. *Id.* This is because trial courts are in the "best position to assess [the comment's] impact on the jurors." *Id.* at 62 ¶ 23, 969 P.2d at 1174.

¶15         Reese has failed to carry his burden of affirmatively demonstrating that he was not tried by a fair and impartial jury. Reese identifies nothing in the record that demonstrates how any of the empaneled jurors were prejudiced. Rather, Reese merely speculates that contamination occurred based on the volume of veniremembers that expressed an inability to serve on the jury. But volume alone is insufficient to demonstrate prejudice. *See State v. Davis*, 137 Ariz. 551, 558, 672 P.2d 480, 487 (App. 1983) (declining to "indulge in an assumption . . . that the panel was tainted" based on the cumulative effect of the remarks by four veniremembers). And speculative prejudice is insufficient under fundamental error review. *See State v. Trostle*, 191 Ariz. 4, 13–14, 951 P.2d 869, 878-79 (1997). Consequently, Reese has failed to present objective evidence of jury prejudice.

4

¶16 We also find Reese's cited authority unavailing. First, we are unpersuaded by Reese's contention that *Davis* is distinguishable on the grounds that the alleged contamination in this case emanated from a significantly greater number of veniremembers. Reese had the opportunity to question potential jurors during voir dire about the potential effect of any of the comments from fellow veniremembers but chose not to do so. Moreover, the trial court took several steps to ensure the fairness of the jury. The court cautioned that "it's important also for the State and the defense to have a fair trial and for nothing really to be said that might prejudice the entire jury . . . ." The court also reminded the jury to "decide the case only on the evidence received here in court."

¶17 Second, the remaining authority Reese cites is distinguishable in one critical respect—in those cases, the alleged taint emanated from veniremembers who possessed expert-like knowledge. *See e.g.*, *Mach v. Stewart*, 137 F.3d 630, 632–33 (9th Cir. 1997) (veniremember commented that in all her years as a social worker, she had never encountered a child who lied about being sexually assaulted); *Paschal v. United States*, 306 F.2d 398, 399–400 (5th Cir. 1962) (prospective juror commented that he was a stockbroker and bank director whose bank had received defendant's counterfeit money). Here, however, none of the excused jurors professed any expert-like knowledge. Accordingly, without any evidence that the jurors were biased, no error occurred, fundamental or otherwise.

**CONCLUSION**

¶18 For the foregoing reasons, we affirm Reese's convictions and sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama