NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

TIM TARTER, et al.,
*Plaintiffs/Appellees,*

v.

DOUGLAS BENDT, et al.,
*Defendants/Appellants.*

No. 1 CA-CV 19-0703
FILED 1-28-2021

---

Appeal from the Superior Court in Maricopa County
No. CV2015-002596
The Honorable Margaret R. Mahoney, Judge

**AFFIRMED**

---

COUNSEL

Richards & Moskowitz, PLC, Phoenix
By William A. Richards, Shayna Gabrielle Stuart
*Counsel for Plaintiffs/Appellees*

Jones Skelton & Hochuli, PLC, Phoenix
By Lori L. Voepel, Petra Lonska Emerson
*Counsel for Defendants/Appellants*

---

## MEMORANDUM DECISION

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge Paul J. McMurdie joined.

---

**M O R S E**, Judge:

¶1        Sonia and Douglas Bendt ("Bendts") appeal the jury verdict for defamation in favor of Tim and Christina Tarter ("Tarters"). For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        The Bendts are a married couple who purchased a condominium in the Fairway Lodge community ("Fairway") in 2008. The Tarters are also a married couple who have lived in Fairway since 2013.

¶3        Fairway is a luxury condominium complex governed by a homeowner's association board ("Board"). Homeowners must pay $795 monthly dues to the homeowner's association ("HOA"). Mr. Tarter and the Bendts ran in the 2013 HOA election. Mr. Tarter won a seat, and his fellow board members elected him president for 2014. During Mr. Tarter's term as HOA president, Mrs. Bendt launched a campaign, including a newsletter emailed to fellow HOA residents, attacking Mr. Tarter's reputation and his handling of the HOA presidency. The Tarters filed suit for defamation.

¶4        The Tarters' complaint identified many disparaging statements made by Mrs. Bendt in her July newsletter. The Tarters alleged that Mrs. Bendt's assertions were defamatory and caused her readers to falsely believe that: (1) Mr. Tarter lacked ethics and/or behaved unethically or illegally; (2) Mr. Tarter concealed material financial information from the HOA members; (3) Mr. Tarter misled HOA members and acted unlawfully; (4) Mr. Tarter conducted and facilitated "secret" Board meetings; and (5) Mr. Tarter wrongfully over-spent HOA funds which would cause an increase in monthly HOA fees. Based on our review, at trial the parties focused on: (1) whether Mr. Tarter was asked to resign from the Board; (2) an $8,000 payment to an exterminator; (3) a tree removal; (4) the Board's executive sessions; (5) $40,000 in alleged overspending; and (6) the monthly HOA fees.

¶5        The Tarters introduced evidence that Mrs. Bendt called Mr. Tarter "idiot," "fool," "spineless," "disgusting," "chicken shit," "lowlife," "low-class sneak," "unethical," "lazy," "weak," and "a complete fake" in front of fellow HOA members.  Additionally, Mrs. Bendt wrote emails calling Mrs. Tarter, whom she had never met, "a bitch" and a "drinking dog walker."  Mrs. Bendt also disparaged Mr. Tarter's legal education, insulted his alma matter, referred to him as a habitual liar, and unethical.  Mrs. Bendt accused Mr. Tarter of violating his attorney ethical obligations, and wrote that he could be disciplined by the Arizona State Bar and investigated by the Attorney General ("AG").

¶6        After an eight-day trial, the jury awarded the Tarters $150,000 for reputational harm, $350,000 for emotional harm, and $1 million for punitive damages.  The superior court awarded a further $20,120.42 in taxable costs.

¶7        The superior court denied the Bendts' motions for judgment as a matter of law and a new trial.  The Bendts timely appealed.  We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

**DISCUSSION**

**I.        Sufficiency of the Evidence – Actual Malice.**

¶8        The parties stipulated that Mr. Tarter, as the HOA president, was a limited purpose public figure.  Thus, the Tarters were required to prove that Mrs. Bendt's defamatory statements were "made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964).  The Bendts assert that insufficient evidence was presented to prove "actual malice," Mrs. Bendt reasonably believed certain claims about Mr. Tarter were true, and other claims were true or opinion.

¶9        Whether sufficient evidence supports a jury finding of "actual malice" is a "mixed question of law and fact subject to independent appellate review." *Dombey v. Phx. Newspapers, Inc.*, 150 Ariz. 476, 486 (1986) (citing *Bose Corp. v. Consumers Union*, 466 U.S. 485, 511 (1984)).  In performing an "independent appellate review," we "must exercise independent judgment and determine whether the record establishes actual malice with convincing clarity." *Id.* (quoting *Bose*, 466 U.S. at 514).  Our supreme court directs us that the "failure to investigate is not reckless disregard per se, but it provides some evidence of actual malice when the facts confronting defendant are such that no reasonable person would fail to investigate." *Id.* at 487 (first citing *St. Amant v. Thompson*, 390 U.S. 727,

731-32 (1968); then citing *Liberty Lobby, Inc. v. Anderson*, 746 F.2d 1563, 1569 (D.C. Cir. 1984)). Finally, "[a]bsent an admission by the defendant that he knew his material was false or that he doubted its truth, a public figure must rely on circumstantial evidence to prove his case." *Id.* (citation omitted).

**¶10** The Bendts argue that "independent review" means de novo review and we should resolve factual disputes in their favor. But independent review is not equivalent to de novo review of all facts and issues. *Bose*, 466 U.S. at 514 n.31; *see also Mandel v. Boston Phx., Inc.*, 456 F.3d 198, 208 (1st Cir. 2006) ("Independent review is not a limitless ransacking of the record as a whole."); *Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533, 540 (Mich. 2010) ("Likewise, an appellate court should not conduct an independent review of credibility determinations, disregard findings of fact, or create new findings of fact."). Instead, "the reviewing court must 'examine for [itself] the statements in issue and the circumstances under which they were made to see . . . whether they are of a character which the principles of the First Amendment . . . protect,'" but "credibility determinations are reviewed under the clearly-erroneous standard because the trier of fact has had the 'opportunity to observe the demeanor of the witnesses . . . .'" *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (first quoting *New York Times*, 376 U.S. at 285; then quoting *Bose*, 466 U.S. at 499-500). Thus, our role is to "'examine for ourselves' the factual record in full" and "accord credibility determinations the special deference to which they are entitled . . . ." *Newton v. Nat'l Broad. Co., Inc.*, 930 F.2d 662, 671 (9th Cir. 1990) (quoting *New York Times*, 376 U.S. at 285) (reading "*Bose* and *Harte-Hanks* as creating a 'credibility exception' to the *New York Times* rule of independent review").[1]

## A. The Alleged Statements Were Provable as False.

**¶11** On appeal, Mrs. Bendt asserts that her speech was opinion, used hyperbolic language, and was protected political speech. The Tarters assert part of this argument was waived. We assume without deciding that the Bendts preserved the issue.

---

[1] In a second notice of supplemental authority filed after oral argument, the Bendts argue the Arizona Constitution provides greater free speech protections than the First Amendment. Because the Bendts did not raise this argument in their opening brief, we do not consider it. *See Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62 (App. 2009) (failure to present significant arguments in opening brief can result in waiver of issue on appeal).

¶12            "A statement regarding matters of public concern must be provable as false before a defamation action can lie." *Turner v. Devlin*, 174 Ariz. 201, 205 (1993) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 16, 19-20 & n.6 (1990)).  We recently identified a three-factor test to determine whether a statement reasonably implies an assertion of objective fact rather than mere opinion or argument: "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false." *Rogers v. Mroz*, --- Ariz. ---, ---, 2020 WL 7223312, *9, ¶ 46 (App. Dec. 8, 2020) (citing *Obsidian Fin. Grp., LLC v. Cox*, 740 F.3d 1284, 1293-94 (9th Cir. 2014)).

¶13            In assessing the publication, the court must consider the totality of the circumstances and take the average reader or listener's viewpoint. *Phx. Newspapers, Inc. v. Church*, 103 Ariz. 582, 587 (1968) (finding editorial printed on the newspaper's front page was libelous per se).

¶14            Here, Mrs. Bendt made her statements in her newsletter titled "Fairway Times at the Biltmore" and described as an "independent newsletter."  Although some newsletter statements identified in the complaint are not provably false, *see Pinal County v. Cooper*, 238 Ariz. 346, 351, ¶ 18 (App. 2015) (statement that someone should be fired is "not susceptible to proof of objective falsity"), several statements allege a provable statement of fact rather than opinion.  For example, the complaint alleges that Mrs. Bendts wrote that (1) the HOA Board held a "secret meeting," (2) the Board violated the HOA's covenants, conditions, and restrictions ("CC&Rs"), (3) Mr. Tarter failed to provide timely notice of HOA meetings, and (4) owners faced "a serious monthly HOA fee increase due to [the Board's] overspending."  Mrs. Bendt made similar statements in her September 2014 newsletter, including that the Board (1) violated CC&Rs, (2) failed to communicate with owners, (3) spent HOA funds without proper authorization, (4) had overspent by $40,000, and (5) caused an imminent HOA fee increase.  Whether Mr. Tarter or the Board committed these actions could be proved false.[2]

¶15            Although Mrs. Bendt's newsletter used hyperbolic language, other statements asserted facts and were believable.  Indeed, the jury heard testimony that other HOA members interpreted Mrs. Bendt's accusations

---

[2]       *See Hansen v. Stoll*, 130 Ariz. 454, 458-59 (App. 1981) (stating that a readily identifiable member of a defamed group may maintain a defamation action).

as fact. *See Yetman v. English,* 168 Ariz. 71, 80 (1991) (describing "important" evidence at defamation trial was the testimony of reporter who interpreted the remark as a defamatory accusation and expert witness opinions "that the remark was susceptible to the interpretation"); *cf. Rogers,* --- Ariz. at ---, 2020 WL 7223312 at *8, ¶¶ 42-43 (holding that summary judgment should be granted when the plaintiff presents no evidence that reasonable listeners may interpret statements as implying an objective, verifiable defamatory fact). Considering the totality of the circumstances, we find that a reasonable person could interpret the newsletter's assertions as factual rather than hyperbolic, and it was proper to let the jury decide the issue. *See Yetman,* 168 Ariz. at 78-79 (holding that jury should determine whether ambiguous statements are fact or opinion).

¶16        Finally, the accusations are ones that could bring Mr. Tarter "into disrepute, contempt, or ridicule, or . . . impeach [his] honesty, integrity, virtue, or reputation." *Godbehere v. Phx. Newspapers, Inc.,* 162 Ariz. 335, 341 (1989). Thus, they are actionable as defamatory. *See Dube v. Likins,* 216 Ariz. 406, 419, ¶¶ 45-46 (App. 2007) (finding "statements that [plaintiff] committed an 'indiscretion' or 'transgressions' in a way that was 'unauthorized' or 'contrary to [his] specific instructions'" were actionable as defamatory).

¶17        We note that in their opening brief, the Bendts did not contest that the false assertions about an imminent HOA fee increase were defamatory and made with actual malice. This Court will generally "uphold a general verdict if evidence on any one count, issue or theory sustains the verdict." *Murcott v. Best W. Int'l, Inc.,* 198 Ariz. 349, 361, ¶ 64 (App. 2000). But a defamatory assertion can be "true" when not every detail is literally accurate; rather, the statement, as a whole, must be "substantially true." *Read v. Phx. Newspapers, Inc.,* 169 Ariz. 353, 355 (1991). Thus, we "'make an independent examination of the whole record' in order to make sure that 'the judgment does not constitute a forbidden intrusion on the field of free expression.'" *Milkovich,* 497 U.S. at 17 (quoting *Bose,* 466 U.S. at 499).

### B.        The Jury Could Reasonably Find the Statements False.

¶18        On appeal, the Bendts claim that some of Mrs. Bendt's statements, such as the ones about the CC&Rs, the exterminator contract, the resignation, and the $40,000 overspending, were true.

¶19        Substantial truth is an absolute defense in a defamation action. *Fendler v. Phx. Newspapers Inc.,* 130 Ariz. 475, 479 (App. 1981). "Slight

inaccuracies will not prevent a statement from being true in substance, as long as the 'gist' or 'sting' of the publication is justified." *Sign Here Petitions LLC v. Chavez*, 243 Ariz. 99, 107-108, ¶ 30 (App. 2017) (quoting *Read*, 169 Ariz. at 355). However, we must "resolve every conflict in the evidence and draw every reasonable inference in favor of the prevailing party." *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz. 307, 312 (1987). The jury's role was "to determine factually whether an allegedly defamatory statement is true," *Fendler*, 130 Ariz. at 479, and we will not reweigh the evidence on appeal, *Whittemore v. Amator*, 148 Ariz. 173, 175 (1986). *Cf. also Rogers*, --- Ariz. at ---, 2020 WL 7223312 at *7, ¶¶ 36, 40 (holding that summary judgment is appropriate when undisputed facts show alleged defamatory statements are substantially true).

**¶20**　　　Mr. Tarter, the past HOA president ("Moe"), the HOA Treasurer ("Steve"), and another Board member ("Deborah") each testified that some or all of the statements were false. The jury also heard testimony that in 2015 the Board hired an independent audit firm to audit the HOA's records, and the audit found "zero deficiencies." To the extent there was a conflict in the evidence between Mrs. Bendt's and other witnesses' testimony, the jury resolved the conflict in favor of the Tarters and the jury's determination was not clearly erroneous. *See Harte-Hanks*, 491 U.S. at 688. The evidence, and the reasonable inferences therefrom, are sufficient to allow a reasonable jury to find the statements were false. *See Fendler*, 130 Ariz. at 479.

**¶21**　　　The Bendts also claim on appeal that Mrs. Bendt's statements about "secret meetings" were justified because the Board's "executive sessions" violated Arizona's open meeting law, and her criticisms were understood in the context of Fairway's tradition of openness. The Tarters assert that these arguments are waived because the Bendts failed to raise them before the superior court. Assuming the Bendts adequately preserved the issue, sufficient evidence supports the jury's determination. While the Bendts might disagree with the testimony of Mr. Tarter, Moe, Deborah, and Steve, or point to conflicting evidence, the jury could have reasonably found the statements about "secret meetings" and the "CC&R violations" related to meetings were false. We do not reweigh the evidence on appeal. *Whittemore*, 148 Ariz. at 175.

### C.　The Jury Could Reasonably Find that Mrs. Bendt Acted with Reckless Disregard for the Truth.

**¶22**　　　Mrs. Bendt also asserts that she subjectively believed her statements were true, as they were supported by personal knowledge,

information from trusted sources, and her research. She argues she relied on information from fellow HOA members, primarily Steve and Moe, and, thus, reasonably believed that certain defamatory statements were true. *See New York Times*, 376 U.S. at 287-88 (finding that defendants reasonably believed publication was true when they relied on the good word of reputable individuals). Mrs. Bendt claimed she relied on these individuals when she published that the HOA was "$40,000 in the hole" and that the Board violated the CC&Rs.

¶23　　　　If her claims were true, the Bendts might be entitled to relief. But the jury heard evidence that conflicted with her claims of reasonable reliance. Steve denied telling Mrs. Bendt about the HOA financials or about supposed secret meetings. He also presented an alternative characterization of the $40,000 budget issue. Moe testified he did not think Mr. Tarter violated the CC&Rs in the tree removal matter, he never said so to Mrs. Bendt, and he did not recall passing information to her about the exterminator contract. Mrs. Bendt also claimed she relied on information from the HOA property manager about the exterminator contract and that Mr. Tarter lied during an HOA meeting about the property manager. But the property manager's testimony supported Mr. Tarter's version of events. Finally, Mrs. Bendt claimed Steve told her that Mr. Tarter and three other members of the Board had been asked to resign from the Board. But Steve testified that he did not ask anyone to resign. Mrs. Bendt admitted in her testimony that she had no confirmation whether her written statements about the resignations were true. In this light, we see no reason to second guess the factfinder's rejection of Mrs. Bendt's reasonable reliance claims. *See Zerangue v. TSP Newspapers, Inc.*, 814 F.2d 1066, 1070-71 (5th Cir. 1987) (noting courts have upheld actual malice findings when "the supposed source of the story disclaimed giving the information").

¶24　　　　Mrs. Bendt also asserts that she subjectively believed her comments about the alleged $40,000 deficit. But Mrs. Bendt admitted that she never reviewed the HOA's financial reports that were available to members. *See Dombey*, 150 Ariz. at 487 (noting that the failure to investigate "provides some evidence of actual malice"). And during the trial, Mrs. Bendt admitted that her statements regarding the $40,000 deficit in her September 2014 newsletter were incorrect. Although Mrs. Bendt testified she sent a correction, she did not introduce a copy of the retraction nor provide a date on which it issued. Moreover, all of this occurred several months after Mrs. Bendt's original statements regarding the deficit in July. *See Schwartz v. Worrall Publ'ns, Inc.*, 610 A.2d 425, 431 (N.J. App. 1992) (noting "the failure to promptly retract may be relevant in evaluating" motive); *cf. Zerangue*, 814 F.2d at 1071 (noting that "a readiness to retract

tends to negate 'actual malice'"). The delay reduces the correction's relevance. *See Glover v. Herald Co.*, 549 S.W.2d 858, 861 (Mo. 1977) ("[A]ctual malice is to be measured at the time of publication[.]"). Further, the absence of the correction from our record limits its mitigation value. *See Boswell v. Phx. Newspapers, Inc.*, 152 Ariz. 9, 19 (1986) (recognizing that a retraction could be considered in mitigation of damages). Thus, correction notwithstanding, the jury remained free to believe or disbelieve Mrs. Bendt's assertions that she subjectively believed her statements about the alleged $40,000 deficit. *See Dombey*, 150 Ariz. at 490 ("Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences are jury functions." (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)); *see also Boswell v. Superior Court*, 125 Ariz. 307, 308 (1980) (holding the "sufficiency of a correction is a question of fact" for the jury). Additionally, the jury could consider that Mrs. Bendt's correction only covered one of the alleged defamatory statements. *See Dombey*, 150 Ariz. at 489 (failure to print retraction "may indicate the presence of actual malice").

¶25        In short, the jury received sufficient evidence to find that Mrs. Bendt defamed Mr. Tarter with actual malice. As the superior court noted in its order denying the Bendt's post-judgment motions, "the trial evidence which established these challenged areas was more than sufficient under the law; in fact, it was both abundant and compelling." *See also Soto v. Sacco*, 242 Ariz. 474, 478, ¶ 8 (2017) (recognizing that a trial judge plays a role akin to a "ninth juror" when ruling on a motion for new trial).

## II.    Evidentiary Issues.

¶26        At trial, the parties disputed the admissibility of some of Mrs. Bendt's emails. Those emails did not discuss the Tarters, were sent either before or after Mr. Tarter's term as president, and contained allegedly prejudicial character evidence. The Bendts also assert the court erred by admitting limited evidence of two prior lawsuits. "We will not disturb a trial court's rulings on the exclusion or admission of evidence unless a clear abuse of discretion appears and prejudice results." *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 506 (1996).

### A.    The Motions in Limine.

¶27        On appeal, the Bendts assert that the court erred by denying their motions in limine. In 2018, the Bendts filed six motions in limine to exclude numerous emails under various evidentiary theories, including prejudice. The motions listed 207 different proposed exhibits, but provided

no content or analysis. After a hearing, the court denied the motions, noting the emails' admissibility was addressed in a prior 2016 ruling. The Bendts moved for reconsideration, arguing that the 2016 ruling only addressed exclusion based on timely disclosure.

¶28 At a second hearing, defense counsel estimated she was seeking exclusion of a thousand pages of exhibits. The court denied the motion for reconsideration, noting that it did not find the motions in limine well-taken and that the court lacked information on the thousand pages of proposed exhibits to grant the motions. As the superior court explained, "that is not how a motion in limine works." Defense counsel asked if the court's minute entry denying the motion would affirmatively allow the defense to "raise [Rule] 403 objections at trial." The court declined to give "an advisory ruling about something that may happen at trial." Later, the court noted that the defense could make specific objections under Arizona Rule of Evidence ("Rule") 403, and granted a defense request to limit the use of an email with a racial slur.

### 1. Waiver.

¶29 "A properly filed motion *in limine* preserves appellant's objections on appeal without need for further objection if it sets forth specific grounds for the objections." *Gibson v. Gunsch*, 148 Ariz. 416, 417 (App. 1985). In determining whether a motion in limine has preserved an issue on appeal, "[t]he essential question is whether or not the objectionable matter is brought to the attention of the trial court in a manner sufficient to advise the court that the error was not waived." *State v. Briggs*, 112 Ariz. 379, 382 (1975). We agree with the superior court that the Bendts' motions in limine were "improper." The motions were overly broad, failed to make an argument or cite authority as to specific emails, and, thus, failed to bring issues to the court's attention in a manner allowing redress. *See State v. Lichon*, 163 Ariz. 186, 189 (App. 1989) (holding that a perfunctory motion in limine considered in summary fashion did not preserve the issue for appeal). The motions in limine did not preserve blanket objections to all emails sent to third parties.

¶30 In their briefs, the Bendts identify 23 admitted exhibits they assert contain inadmissible evidence. The Bendts assert that "the trial court legally erred by not balancing Rule 403 factors on the record for the appellate court to assess." Yet for most of these exhibits the Bendts made no objection to prompt the court to make such a ruling. Indeed, it was defense counsel who moved for admission of Exhibit 254, which they now describe as "particularly troubling." The Bendts' failure to file a proper

motion in limine or object at trial deprived the court of a meaningful opportunity to consider the evidentiary issues. *See Starkins v. Bateman*, 150 Ariz. 537, 544 (App. 1986) (finding failure to lodge contemporaneous or continuing objection waived issue). Thus, in large part, the Bendts have failed to preserve this issue for appeal.

### 2. Exhibit 246.

**¶31** At trial, the Bendts objected to Exhibit 246 on the ground that it was cumulative but do not reassert that argument on appeal. An "objection on one ground does not preserve the issue on another ground." *State v. Lopez*, 217 Ariz. 433, 434, ¶ 4 (App. 2008). Thus, the Bendts did not preserve the objections to Exhibit 246.

### 3. Exhibit 13.

**¶32** During the trial, the defendants objected to Exhibit 13. The transcript did not record the bench conference where the court and counsel discussed the objection. On appeal, the Bendts assert the exhibit was inadmissible under Rules 401, 403, and 404.

**¶33** Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Ariz. R. Evid. 401. In general, all relevant evidence is admissible, Ariz. R. Evid. 402, but may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, Ariz. R. Evid. 403. Furthermore, evidence of a person's character is not admissible to prove action in conformity therewith. Ariz. R. Evid. 404(a). Likewise, evidence of other acts is not admissible to prove character in conformity with those acts but may be admitted to prove motive, opportunity, or intent, among other things. Ariz. R. Evid. 404(b)(1)-(2).

**¶34** Exhibit 13 consists of emails written by Mrs. Bendt to third parties disparaging other Board members, calling them "ridiculous," "resentful," "abrasive," "arrogant," "rude," "sleazy," "lower class," "bottom feeders," and a false accusation that one member was having an affair. The exhibit was relevant to rebut the defense's theory that Mrs. Bendt's defamatory statements were directed at problems in the community rather than at Mr. Tarter and other Board members personally. *See Harte-Hanks*, 491 U.S. at 667-68 ("Although courts must be careful not to place too much reliance on such factors, a plaintiff is entitled to prove the defendant's state of mind through circumstantial evidence, and it cannot be said that evidence concerning motive or care never bears any relation to the actual malice inquiry." (citations omitted)). The exhibit was additionally relevant

to the Tarters' punitive damages claim. *See infra* ¶ 62; *see also Forquer v. Pinal County*, 22 Ariz. App. 266, 270 (1974) (noting that "statements made by the tortfeasor following the accident showing malice or hostility, may be admissible on the issue of punitive damages").

**¶35** Although the exhibit included evidence of other acts of potential defamation, the exhibit was not used to show action in conformity. There was no dispute that Mrs. Bendt wrote the defamatory emails, the issue was whether she wrote them with actual malice. To that end, the exhibit was admissible to show Mrs. Bendt's motive and intent. *See Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 499 (1987) (noting that when the defendant "did not deny its acts nor allege that they were unintentional," testimony of past practices was still "relevant and admissible to prove [defendant's] improper motives"). Additionally, in a defamation case, the "meaning of words and statements should not be construed in isolation; rather, consideration should be given to the context and all surrounding circumstances, including the impression created by the words used and the expression's general tenor." *Burns v. Davis*, 196 Ariz. 155, 165, ¶ 39 (App. 1999); *see also* Restatement (Second) of Torts § 563 cmt. d (1977) ("The context of a defamatory imputation includes all parts of the communication that are ordinarily heard or read with it."). Finally, we do not find the exhibit's relevance outweighed by any undue prejudice, especially when the jury received other evidence of these statements. *See Pub. Serv. Co. of Okla. v. Bleak*, 134 Ariz. 311, 322 (1982) (finding no prejudicial error where the statement "was merely cumulative to other evidence properly admitted").

**¶36** Thus, the Bendts have not demonstrated that the superior court abused its discretion in admitting the disputed exhibits.

## B. Evidence of Other Lawsuits.

**¶37** At trial, the jury heard testimony about two other lawsuits; one between the Bendts and the Fairway developer, and one by the Bendts against the 2016 HOA Board. The Bendts claim the trial court erred in either admitting the evidence of the prior lawsuits or, alternatively, not allowing the Bendts to introduce evidence of the second lawsuit's resolution. The Bendts' opening brief provides no discussion of the first lawsuit. Thus, we do not consider it. *Lohmeier v. Hammer*, 214 Ariz. 57, 64, ¶ 26 n.5 (App. 2006) (noting failure to develop an argument in opening brief will result in waiver). The Bendts argue the second lawsuit's result was admissible to show the bias of witnesses Deborah and the successor HOA President

("Dan"). We review the trial court's determination of relevance for an abuse of discretion. *State v. Kiper*, 181 Ariz. 62, 65 (App. 1994).

¶38 During the cross-examination of Dan, the superior court sustained the plaintiff's objection to the admission of the minute entry from the 2016 lawsuit but permitted defense counsel to use Dan's deposition in the 2016 lawsuit for impeachment purposes. *See* Ariz. R. Evid. 801(d)(1)(B)(i). The Bendts did not attempt to introduce the lawsuit during Deborah's testimony. On appeal, the Bendts assert that it was error not to allow evidence of the case resolution "despite having allowed Bendts' counsel to question [Dan] about his deposition in that matter." The Bendts cite no legal authority to support this argument. The superior court found the 2016 lawsuit's resolution irrelevant to the issue of defamation in 2014. We agree.

## III. Evidence of Insurance.

### A. Testimony.

¶39 The Bendts assert the superior court committed reversible error by admitting evidence of the Bendts' insurance policy. Evidence that a person is insured against liability is not admissible to prove whether the person acted negligently or wrongfully, but it may be admitted for other purposes. *See* Ariz. R. Evid. 411. We review the superior court's admission of evidence regarding insurance for an abuse of discretion. *Webb v. Webb*, 151 Ariz. 461, 465 (App. 1986). We will not disturb the admission of evidence "unless a clear abuse of discretion appears and prejudice results." *Gemstar*, 185 Ariz. at 506.

¶40 The Bendts filed a motion in limine to exclude any reference to their liability insurance. The Tarters opposed, arguing that Mrs. Bendt considered the insurance coverage a shield allowing her to defame fellow HOA members and that the evidence could be admissible to show motive or intent. The court reserved ruling on the motion, noting there are "purposes for which it can properly be introduced."

¶41 During opening statements, defense counsel told the jury that a key issue would be whether Mr. Tarter reasonably suffered fear, anxiety, or other emotional responses to Mrs. Bendt's alleged defamatory statements. During Mr. Tarter's cross-examination, defense counsel elicited from him that despite Mrs. Bendt's statements that he could be disciplined by the Arizona State Bar and investigated by the AG, he is unaware if she ever actually reported him.

¶42        Dan testified that during his term as president, Mrs. Bendt made false reports about him multiple times to the California State Bar and instigated an unjustified AG investigation. On cross-examination, defense counsel asked Dan whether he had sued Mrs. Bendt for defamation. Dan said he had not. At a bench conference during the redirect examination of Dan, plaintiff's counsel informed the court he intended to ask Dan why he had not sued Mrs. Bendt for defamation and expected the answer would be that Mrs. Bendt had a defamation insurance policy. Defense counsel objected on relevance and Rule 411 grounds. The superior court noted that defense counsel had "asked a very dangerous question" and found defense counsel had opened the door. The court and defense counsel then crafted a limiting instruction to be given to the jury after the anticipated answer.

¶43        When plaintiff's counsel asked Dan why he did not file a defamation suit against Mrs. Bendt, Dan testified that one reason "was that it was known in the community that Mrs. Bendt had a $2 million defamation insurance policy. And you'd have to have a lot of resources to stay in court for three, four years to fight and prove your point that you were defamed against an insurance company." Defense counsel did not object to Dan's reference to the policy's amount. The court then gave the jury a limiting instruction.

¶44        When a defendant voluntarily makes evidence of the defendant's insurance relevant, evidence of such insurance is admissible. *N. Ariz. Supply Co. v. Stinson*, 73 Ariz. 109, 112-13 (1951); *see Anderson Aviation Sales Co. v. Perez*, 19 Ariz. App. 422, 428 (1973) (finding answer on cross-examination that included insurance when discussing circumstances in which the witness would rent aircraft did not constitute grounds for mistrial). Here, the defense's question opened the door and made the existence of insurance relevant. *See Pool v. Superior Court*, 139 Ariz. 98, 103 (1984) ("[W]here one party injects improper or irrelevant evidence or argument, the 'door is open,' and the other party may have a right to retaliate by responding with comments or evidence on the same subject."); *cf. Ventura v. Kyle*, 825 F.3d 876, 884-85 (8th Cir. 2016) (finding counsel's unsupported insurance reference was a "deliberate strategic choice to try to influence and enhance damages" and was improper (citation and internal quotation marks omitted)).[3] Accordingly, the trial court did not abuse its discretion.

_____

[3]        In their motion for new trial and on appeal, the Bendts assert the insurance evidence was unduly prejudicial. At trial, however, the Bendts

### B.    Jury Instruction.

**¶45**        On appeal, the Bendts also assert that the court failed to instruct the jury that insurance is not relevant to the calculation of damages. "We review a court's jury instructions for an abuse of discretion.  But we review whether a jury instruction correctly states the law de novo.  In deciding this question, we review jury instructions in their totality."  *A Tumbling-T Ranches v. Flood Control Dist. of Maricopa Cnty.*, 222 Ariz. 515, 533, ¶ 50 (App. 2009) (internal citations omitted).  A court must provide a limiting instruction when evidence is admissible for one purpose and not another.  Ariz. R. Evid. 105; *see also Readenour v. Marion Power Shovel, Inc.*, 149 Ariz. 442, 451-52 (1986) (remanding for a new trial because the failure to grant a request for a limiting instruction permitted the jury to use the subsequent remedial evidence as proof that the product was defective and unreasonably dangerous).  A jury instruction warrants reversal if it was "both harmful to the complaining party and directly contrary to the rule of law."  *Powers v. Taser Int'l, Inc.*, 217 Ariz. 398, 400, ¶ 12 (App. 2007) (corrected).

**¶46**        At trial, the Bendts requested that the court give the standard jury instruction for insurance coverage.  *See* Rev. Ariz. Jury Instr. ("RAJI") (Civil) Stand. 9 (6th ed. 2015) ("In reaching your verdict, you should not consider [or discuss] whether a party was or was not covered by insurance.").  The court declined, finding that the evidence was admitted at trial for a limited purpose.  The Bendts then requested that the court give an instruction that the evidence could not be used for damages.  *See* RAJI (Civil) Stand. 9 ("Insurance or the lack of insurance has no bearing on . . . damages . . . .").  The Tarters opposed, arguing that the evidence went to the reasonableness of Mr. Tarter's fear of future harm and humiliation.  Noting the parties' disagreement, the court redrafted the instructions.

**¶47**        After the defense rested, the court called a bench conference, provided its jury instruction to counsel, and noted that Mrs. Bendt had

---

only raised a Rule 411 objection and did not argue undue prejudice.  Thus, we do not consider whether the probative value of the insurance was substantially outweighed by a danger of unfair prejudice.  *See State v. Montano*, 204 Ariz. 413, 425, ¶ 58 (2003) (holding failure to object to evidence on Rule 403 grounds waived the objection); *Conant v. Whitney*, 190 Ariz. 290, 293 (App. 1997) (holding that issue raised for the first time in a new trial motion was waived on appeal); *see also Muehlebach v. Mercer Mortuary & Chapel, Inc.*, 93 Ariz. 60, 65 (1963) (holding that the mere mention of a defendants' liability insurance is not per se prejudicial).

testified that she had lost her insurance policy because of the lawsuit. The court cautioned counsel that they could address it in closing arguments if they disagreed with the instruction. The court's jury instruction stated:

> Insurance. As you were instructed during the trial, evidence that a person was or was not insured against liability is not admissible to prove whether the person acted wrongfully. But it may be considered for other relevant purposes such as when witness Dan [] testified regarding why he did not sue Mrs. Bendt. The attorneys may explain in their closing arguments whether they believe any evidence of insurance is relevant for purposes other than proving that Mrs. Bendt acted wrongfully.

Neither party addressed insurance during their closing arguments.

¶48 The Arizona Rules of Evidence bar consideration of insurance coverage to the issue of liability but do not expressly prohibit consideration of insurance on the issue of damages. *See* Ariz. R. Evid. 411. While such consideration is barred in the standard jury instruction promulgated by the Arizona State Bar, *see* RAJI (Civil) Stand. 9,[4] the RAJIs have not been approved by the Arizona Supreme Court, *State v. Logan*, 200 Ariz. 564, 566, ¶ 12 (2001); *see Life Inv'rs Ins. Co. of Am. v. Horizon Res. Bethany, Ltd.*, 182 Ariz. 529, 532 (App. 1995) ("A jury instruction need not be a model instruction, as long as it does not mislead the jury when the instructions are read together and in light of each other.").

¶49 Thus, the court's instruction accurately conveyed the substance of Rule 411, the applicable legal standard. *See Filasky v. Preferred Risk Mut. Ins. Co.*, 152 Ariz. 591, 599 (1987) ("All we require of the trial judge is that he convey in his instructions to the jury the substance of the applicable legal standard."). Moreover, the court's instruction did not specifically endorse consideration of insurance for damages or any purpose beyond explaining Dan's decision not to sue. And neither counsel argued that insurance was relevant to the issue of damages. *See State v. Johnson*, 205 Ariz. 413, 417, ¶ 11 (App. 2003) ("[I]n evaluating the jury instructions, we

---

[4] The standard jury instruction was promulgated in 2005 and does not rely on Arizona authorities for the reference to damages. *See* RAJI (Civil) Stand. 9 (4th ed. 2005) (citing Shari Seidman Diamond & Neil Vidmar, *Jury Room Ruminations on Forbidden Topics*, 87 Va. L. Rev. 1857, 1910 (2001); Judicial Council of California Civil Jury Instructions (2003-04), CACI No. 105).

consider the instructions in context and in conjunction with the closing arguments of counsel."); *cf. Ventura*, 825 F.3d at 885-86 (ordering new trial when counsel made improper statements about defendant's insurance during the closing argument). The Bendts provide no other authority that the instruction misstated the law. *See S. Pac. Co. v. Barnes*, 3 Ariz. App. 483, 488 (1966) ("It is well-established in our law that the fact that evidence is not admissible for one purpose does not exclude the evidence if it is admissible for another legitimate purpose.").

¶50 The defense made the Bendt's insurance relevant and did not assert unfair prejudice at trial. Moreover, the court's instruction accurately stated the law, and neither party argued to the jury that insurance was relevant for an improper purpose. Accordingly, we cannot say the court abused its discretion by declining to give the RAJI standard instruction.

## IV. Juror Bias.

¶51 Next, the Bendts assert that the court erred when it refused to strike Juror 1 for cause. On the fifth day of trial, Juror 1 informed the court that her daughter had attended the same law school as Mr. Tarter. Juror 1 revealed that she was "shocked" by Mrs. Bendt's disparaging statements about the school. The court questioned Juror 1, who said that the law school criticism seemed "an insignificant comment in the grand scope of things," and asserted that she could remain fair and impartial. The court denied the Bendt's motion to disqualify. On the last day of trial, Juror 1 was randomly selected as the alternate.

¶52 A trial court must disqualify jurors who are "biased or prejudiced in favor of or against either of the parties." A.R.S. § 21-211(4); *see also* Ariz. R. Civ. P. 47(d)(1)(D). But "[t]he fact that a juror possesses certain opinions or preconceived ideas does not necessarily render that juror incompetent to decide fairly and impartially." *State v. Clabourne*, 142 Ariz. 335, 344 (1984). The superior court is in the best position to determine a juror's impartiality based upon the juror's demeanor and credibility, and we will only reverse a determination that a juror is fair and impartial for an abuse of discretion. *Id.* at 344.

¶53 The Bendts argue that the failure to disqualify Juror 1 violated their due process rights because her verdict was likely based "on information gleaned from other sources." However, Juror 1's selection as the alternate means that she did not render a verdict in the case. The Bendts also assert that Juror 1 had a personal interest in the outcome of the case. But Juror 1 stated that her daughter chose to attend the school without Juror

17

1's input and a limited connection to the school through her daughter does not rise to the level of personal interest that requires disqualification. *See State v. Acuna Valenzuela*, 245 Ariz. 197, 210, ¶ 32 (2018) ("[A] juror who knows some of the people involved in a case is not automatically barred from serving on a jury."); *cf. State v. Eddington*, 228 Ariz. 361, 363, ¶ 11 (2011) (discussing non-pecuniary interests requiring juror disqualification). Finally, the Bendts argue that Juror 1 "participated in discussions with fellow jurors during the two-week trial [and her] inability to be impartial likely influenced her fellow jurors." But the superior court questioned Juror 1 and found that she was forthcoming about her connection to the school, appeared open-minded to the case, and her answers were credible. *See State v. Reasoner*, 154 Ariz. 377, 384 (App. 1987) (holding that a juror who assures the court that he or she can be fair and impartial need not be excused). Accordingly, we find no error.

## V.     Compensatory Damages.

**¶54**        The Bendts argue that the compensatory damages are not supported by evidence, are excessive, and that a new trial, or remittitur, should be ordered.

**¶55**        "It is 'well settled in Arizona that the amount of an award for damages is a question peculiarly within the province of the jury, and such award will not be overturned or tampered with unless the verdict was the result of passion and prejudice.'" *In re Estate of Hanscome*, 227 Ariz. 158, 162, ¶ 12 (App. 2011) (quoting *Larriva v. Widmer*, 101 Ariz. 1, 7 (1966)); *see also Creamer v. Troiano*, 108 Ariz. 573, 576 (1972) (holding that unless a verdict is the result of passion or prejudice, we must affirm if the "case has been submitted on correct rulings and instructions, and the verdict is within the range of credible evidence"). We "will not disturb the damages awarded when there is evidence in the record to support the award," and "the amount awarded does not shock the conscience." *Higgins v. Assmann Elecs., Inc.*, 217 Ariz. 289, 295-96, ¶ 23 (App. 2007) (citation omitted). If the alleged defamatory statement involves a matter of public concern, compensation can only be awarded for actual injury. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350-51 (1974); *Boswell*, 152 Ariz. at 19. The Supreme Court in *Gertz* did not specifically define "actual injury" but noted "that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." 418 U.S. at 350.

¶56        The jury awarded the Tarters $150,000 for reputational harm and $350,000 for emotional harm.  These awards are supported by sufficient evidence.  *See Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 580, ¶ 30 (App. 2015) (noting that "once the jury found [defendant's] statements were defamatory . . . it was within the jury's province to consider any actual damage to Plaintiffs' reputations and/or any emotional damage or damage to sensibility").

¶57        The Tarter's testified to the emotional harm caused by Mrs. Bendt, including the damage to their marriage and the fear and anxiety incurred by repeated allegations of dishonesty, law-breaking, and ethical violations.  Testimony from other community members was consistent with the Tarters' claims of emotional suffering.  The jury also heard substantial testimony about how Mrs. Bendt's newsletters had harmed Mr. Tarter's reputation in the community, including testimony about angry residents at HOA meetings and that members believed Mrs. Bendt's accusations about Mr. Tarter.

¶58        The Bendts rely on *Petta*, a defamation case where we concluded the jury's $11 million compensatory damages award was unsupported by evidence, "shock[ed] the conscience," and required a new trial.  236 Ariz. at 584, ¶ 45.  There we found that "[t]he evidence on damages was noticeably thin, entirely subjective, and based solely on Plaintiffs' non-specific, vague, and conclusory testimony."  *Id.* at 583, ¶ 41.  Here, the compensatory damage award was supported by evidence from multiple witnesses.  *See supra* ¶ 57.  Further, the verdict rendered in *Petta* "was approximately equivalent to the largest civil jury verdict in Arizona in 2013, [was] the thirtieth largest civil verdict in Arizona in the past ten years . . . [and] nearly four times the verdict entered in the next largest defamation case."  *Id.* at 584, ¶ 44 (citing Kelly W. MacHenry, *Arizona's Civil Verdicts 2013*, Ariz. Att'ny, 40, 50 (June 2014)).  The same comparison cannot be made here.  The Tarters's verdict did not rank among Arizona's top ten civil verdicts, *see* Carlie Tovrea & Alysha Green, *Arizona Civil Verdicts: 2019*, Ariz. Att'ny, 14-25 (June 2020), nor did they receive the largest compensatory damages award for defamation in 2019, *cf. Hinds v. Bales*, CV2018-001901, 2019 WL 6533031 (Maricopa Cnty. Sup. Ct. Oct 14, 2019) (judgment of $722,082 for compensatory damages and $277,918 punitive damages in a case arising under defamation and tortious interference with contract).  Thus, *Petta* is distinguishable.

¶59        Given the foregoing, the jury's compensatory damages award was supported by evidence of actual injury, and we cannot say it shocks the conscience.

## VI.  Punitive Damages.

**¶60**　　　　A jury may award punitive damages to punish a defendant for willful or malicious conduct and deter others from similar behavior. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 n.9 (1986) (citation omitted); *see Hudgins v. Sw. Airlines, Co.*, 221 Ariz. 472, 486, 489, ¶¶ 38, 50 (App. 2009) (recognizing that punitive damages should be awarded only in the most egregious cases and are not intended to compensate plaintiffs but to punish the wrongdoer and deter both the wrongdoer and others from future harmful conduct).

### A.　　　Evidence Supported the Punitive Damages Award.

**¶61**　　　　To obtain punitive damages, "there must be evidence of an 'evil mind' and aggravated and outrageous conduct" that is "over and above that required for commission of a tort." *Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 331-32 (1986).　The Bendts assert that the record "demonstrates a lack of malice" and that Mrs. Bendt's "conduct did not rise to the 'most egregious' level of cases in which juries may award punitive damages."

**¶62**　　　　The voluminous evidence is summarized by Dan's testimony: "[Mrs. Bendt's] commentary and her constant tirade through many emails to the broader community was we were bottom feeders, that we were poor, that we shouldn't live there, that we didn't have a right to be there, because we weren't as wealthy as her or didn't have as many assets as her or didn't dress as nice as her . . . ."　The jury also heard evidence that Mrs. Bendt hoped some residents would "sell so we can get people that really belong at [Fairway]."　And the record supports that Mrs. Bendt considered the Tarters part of the "low class" "bottom feeders" and "low price buyers," she believed Mr. Tarter would be distraught at her accusations, her objective was to "place a leash" on the Board, and she was happy to be "so annoying!"

**¶63**　　　　Thus, the Tarters proved the requisite "something more" to support the award of punitive damages.　*See Rawlings v. Apodaca*, 151 Ariz. 149, 161 (1986); *see also Scottsdale Publ'g, Inc. v. Superior Court*, 159 Ariz. 72, 82 n.7 (App. 1988) (discussing correlation between "actual malice" required to prove defamation and "evil mind" necessary to obtain punitive damages in a tort action).

### B.    The Punitive Damages Award was not Unconstitutional.

¶64        The Bendts argue that the punitive damage award was unconstitutional.  The Tarters assert that we must defer to the discretion of the jury.

¶65        Punitive damage awards have substantive limits.  *Sec. Title Agency, Inc. v. Pope*, 219 Ariz. 480, 501, ¶ 93 (App. 2008).  "A grossly excessive punitive damage award violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution . . . ."  *Hudgins*, 221 Ariz. at 489, ¶ 50; *see Hyatt Regency Phx. Hotel Co. v. Winston & Strawn*, 184 Ariz. 120, 134 (App. 1995) ("Arizona's courts do not hesitate to overturn excessive or inadequate punitive damage awards.").  We review punitive damage awards de novo, considering the following guideposts "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases."  *Pope*, 219 Ariz. at 501, ¶ 94 (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003)).[5]

### 1.    Reprehensibility.

¶66        The Supreme Court has identified several factors for courts to consider when determining the reprehensibility of the defendant's conduct.  *See State Farm*, 538 U.S. at 419 (listing factors).  Based on our previous descriptions of the relevant testimony, we find that the jury could have found at least one factor in that "the harm was the result of intentional malice."  *Id.*; *see Pope*, 219 Ariz. at 502, ¶ 98 ("Because First American acted with an evil mind, it necessarily acted with intentional malice for purposes of the *State Farm* reprehensibility guidepost.").  We conclude that Mrs. Bendt's conduct, in this case, was sufficiently reprehensible to justify an award of punitive damages.

---

[5]        Defamation is a common-law tort, "and we agree with the Tenth Circuit that 'a violation of common law tort duties [may] not lend [itself] to a comparison with statutory penalties.'"  *Pope*, 219 Ariz. at 501, ¶ 94 n.19 (quoting *Cont'l Trend Res., Inc. v. Oxy USA Inc.*, 101 F.3d 634, 641 (10th Cir. 1996)).  We have previously declined to analyze the third guidepost when it neither weighs for nor against the punitive damages award.  *Id.*  We do so again here as "neither party points us to a civil penalty that is sufficiently analogous to allow for comparison."  *Id.*

### 2.     Ratio of Punitive to Compensatory Damages.

**¶67**          Regarding the second guidepost, the Supreme Court in *State Farm* declined to "impose a bright-line ratio which a punitive damages award cannot exceed," but observed that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." 538 U.S. at 425.  The Supreme Court also stated that "[w]hen compensatory damages are substantial, . . . a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." *Id.* at 425.

**¶68**          We find the $500,000 award for compensatory damages, in this case, is substantial.  *See, e.g., Hudgins*, 221 Ariz. at 491, ¶ 58 (finding award of $500,000 for emotional distress substantial); *Nardelli v. Metro. Grp. Prop. & Cas. Ins. Co.*, 230 Ariz. 592, 611, ¶ 96 (App. 2012) (finding "$155,000 compensatory damage award was substantial").  On appeal, the Bendts assert that the ratio must be reduced to 1:1 as suggested in *State Farm* and applied in several recent Arizona cases.  *See Hudgins*, 221 Ariz. at 492, ¶¶ 64-65 (reducing 8:1 ratio of punitive damages to 1:1); *Pope,* 219 Ariz. at 503-04, ¶¶ 104, 108 (reducing 5.7:1 ratio of punitive damages to 1:1); *Nardelli*, 230 Ariz. at 612, ¶ 100 (reducing 4:1 ratio of punitive damages to 1:1).  But those cases involved punitive damage awards that met or exceeded *State Farm's* vague line of "constitutional impropriety."  538 U.S. at 425; *cf. Nardelli*, 230 Ariz. at 611, ¶ 96 (trial court reduced 355:1 ratio of jury imposed punitive damages to 4:1).  Here, the jury only awarded punitive damages at a 2:1 ratio.  *See Zimmerman v. Direct Fed. Credit Union*, 262 F.3d 70, 82 (1st Cir. 2001) (holding that "the 2:1 ratio of compensatory to punitive damages awarded by the jury here presents no cause for concern"); *cf. Williams v. First Advantage LNS Screening Sols. Inc*, 947 F.3d 735, 760-61 (11th Cir. 2020) (collecting circuit court cases and finding a "majority of the affirmed cases involved ratios of 2:1 or less").  Furthermore, this was not a case of economic damages, which are "less worthy of large punitive damages awards," *Pope*, 219 Ariz. at 502-03, ¶ 96 (quoting *Inter Med. Supplies, Ltd. v. EBI Med. Sys., Inc.*, 181 F.3d 446, 467 (3d Cir. 1999)), but included damages for the emotional and reputational harm the Tarters suffered.

**¶69**          Considering the foregoing, we conclude the jury's punitive damages award passes constitutional muster.

**CONCLUSION**

¶70        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:   AA